RITHOLZ and others, Respondents, vs. AMMON, Director of Agriculture, STATE DEPARTMENT OF AGRICULTURE, Appellant.*

*April 9—June 1, 1942.*

* Motion for rehearing denied, with $25 costs, on September 16, 1942.

580

For the appellant there were briefs by the *Attorney General* and *Warren H. Resh,* assistant attorney general, and oral argument by *Mr. Resh.*

For the respondents there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *Harold M. Wilkie* and *W. L. Jackman.*

WICKHEM, J. The complaint alleges that plaintiffs are residents of the city of Chicago and copartners doing business under the name of National Optical Stores Company; that defendant, Ammon, is the duly appointed, qualified, and acting director of agriculture; that defendant, R. M. Orchard, is the duly qualified and acting assistant attorney general of Wisconsin; that the business of plaintiffs is the furnishing of optical service; that this service consists of grinding and processing lenses and the furnishing of frames, mountings, and lenses pursuant to prescriptions; that plaintiffs' principal office is in the city of Chicago where they maintain a laboratory for the preparation of lenses and their proper mounting; that orders for eyeglasses are taken by employees for future delivery from the office of plaintiffs in the city of Chicago; that the principal value of eyeglasses is not their cost but the value of the service of grinding lenses to individual requirements; that on July 30, 1941, there was served on Albert Dare and J. W. Smith, of Madison, Wisconsin, a notice of hearing and purported complaint issued by the state department of agri-

culture. A copy of this complaint is attached to plaintiffs' complaint. The complaint of the department of agriculture asserts that plaintiffs and their agents have been engaged and are engaging in practices which constitute unfair methods of business and competition within the meaning of sec. 100.20, Stats. On information and belief this complaint charges that National Optical Stores Company is associated with certain other individuals named as respondents; that Albert Dare is manager of a store conducted in Appleton under the name of National Optical Stores Company; that Lewis S. Graves, of Madison, is engaged by the National Optical Stores Company to examine eyes for the purpose of prescribing lenses; that Frank W. Marzluff is the manager of a store under the name of National Optical Stores Company at Oshkosh, Wisconsin, and that Ray Nixon, a doctor of medicine, is engaged by National Optical Stores Company to examine eyes for the purpose of prescribing lenses. Similar allegations are to the effect that J. W. Smith is manager of the store in Madison, and F. J. Erdlitz, a doctor, is engaged at this store for the purpose of examining eyes and prescribing lenses. It is charged that on July 9, 1941, National Optical Stores Company published in the Oshkosh Daily Northwestern an advertisement offering glasses for the sum of $3.45, ground on the prescription of a licensed doctor; that this advertisement purported to permit a fifteen-day free trial of the glasses, and asserted that a large factory, coupled with tremendous purchasing power, makes possible cheaper prices to the customers; that these representations induced the sale of large quantities of glasses; that the representations were not made in good faith or with intention of furnishing glasses in the terms of the representations, but as a means of inducing customers to pay large sums of money ranging from $6 to $40; that it is the practice of the National Optical Stores Company to require persons responding to such advertising to employ the services of a doctor of medicine whose place of business is at

a desk in the store and pay him a fee of from $1 to $2, more or less; that the representations made by the company in its various advertisements that "glasses no better than these are sold by other concerns for several times this price," "Largest opticians in America," "Home owned outlets," "Perfect satisfaction guaranteed or no cost," "Lowest factory prices," are false and misleading and constitute unfair business practices and unfair business methods of competition. Plaintiffs' complaint alleges that they have never been served with the department's notice or complaint or any other paper or document for any proceeding before the state department of agriculture, but that the notice and complaint have been served upon Lewis S. Graves, Ray Nixon, and F. J. Erdlitz, none of whom are engaged in the sale, manufacture, or advertising of eyeglasses; that Albert Dare and J. W. Smith have no duties or powers other than to take orders and remit them to plaintiffs in Chicago for execution and delivery to the person placing the order; that the charges in the department's complaint are false; that as a result of the issuance of this notice and order plaintiffs have been refused space for advertising in the newspapers and defendants have given press releases setting forth the allegations in the complaint as a result of which employees have been intimidated and have threatened to leave plaintiffs' employ; that sec. 100.20 (1), Wis. Stats., is unconstitutional as an unlawful delegation of legislative power by the legislature in violation of sec. 1, art. IV, Wis. Const., and as an attempted encroachment upon the powers of the courts contrary to secs. 2 and 8, art. VII, Wis. Const.; that plaintiffs are not engaged in intrastate commerce and that defendants have no power whatever to regulate or prescribe any rules or regulations for their conduct in the operation of their business; that no business or trade whatever is carried on in Wisconsin; that anything that is done in Wisconsin is a mere incident to the furnishing of the services of mounting or grinding lenses in Chicago; that

the entire transaction with each person placing an order is an interstate transaction, and interference by defendants is contrary to the provisions of sec. 8, art. I, U. S. Const., granting to congress the power to regulate commerce between the states; that all orders are filled in Chicago; that all advertising is prepared in Chicago and transmitted by mail to newspapers in Wisconsin; that all orders are subject to acceptance or rejection by plaintiffs at the Chicago office, and that all exchanges and refunds are made by mail from Chicago; that all moneys received by plaintiffs' employees in Wisconsin are transmitted to plaintiffs' Chicago office by mail; that the proceeding by defendants violates the rights of plaintiffs' employees guaranteed by sec. 1, art. I, Wis. Const., and the Fourteenth amendment to the U. S. Const. in the following respects:

1. That the complaint does not allege sufficient facts to permit the parties charged to prepare a defense thereto;

2. That the complaint is filed by R. M. Orchard, as counsel for the state department of agriculture, whereas sec. 93.07 (23), Wis. Stats., imposes upon the department of agriculture the duty of enforcing the provisions of ch. 100, Wis. Stats., and does not anywhere vest authority in R. M. Orchard, assistant attorney general, as counsel for the department, to make any complaint on behalf of the department;

3. That the complaint purports to charge offenses by plaintiffs and their employees, and the department claims the right to be both prosecutor and judge and to pass upon the existence of facts which it already claims to be true;

4. That the complaint is based wholly on information and belief;

5. That the complaint is directed to numerous persons, firms, and corporations, who with the exception of plaintiffs, are nonexistent;

6. That none of the plaintiffs have ever been served with any notice or complaint.

Plaintiffs are informed that the department of agriculture is of the belief that by serving notice upon Albert Dare and J. W. Smith, employees of plaintiff, it has obtained jurisdiction over the person of plaintiffs, and may proceed to enter an order against plaintiffs to cease and desist from the pursuit of their business; that the entry of such an order, while void, would cause plaintiffs irreparable damage; on information and belief that the notice and complaint were instigated by, and issued in connivance of private persons, the identity of whom is unknown to plaintiffs; on information and belief that a privately employed attorney representing the Wisconsin Association of Optometrists prepared the department's notice and complaint, and that their issuance by the department was without investigation but solely on the representations of such attorney, and that the Wisconsin Association of Optometrists and its attorney have agreed to, and are being permitted to, conduct and control all proceedings before such department; that the object of the combination between defendant and the Wisconsin Association of Optometrists is to prevent competition with the business of members of the Optometrists Association and to permit such members to make exorbitant charges for eyeglasses to the public; that pursuant to this combination, this association, through its officers and agents, has threatened plaintiffs' employees with arrest, threatened physicians, whose prescriptions for eyeglasses plaintiffs have filled, with revocation of their licenses, have conducted a secondary boycott, and intimidated newspaper publishers, and that the complaint and notice is a part of such unlawful course of conduct on the part of said combination. There are allegations of irreparable injury and the usual prayer for injunctive relief.

Defendants contend:

(1) That the temporary restraining order was improperly and improvidently issued;

(2) That the court was in error in overruling the demurrer;

(3) That the court erred in granting a temporary injunction *pendente lite*.

The *ex parte* restraining order should not have been granted. In *Milwaukee Horse & Cow Comm. Co. v. Hill*, 207 Wis. 420, 241 N. W. 364, the practice of issuing *ex parte* temporary restraining orders against the state officers and commissions was strongly criticized and what was said there is applicable here. However, this matter is moot. The restraining order was issued and its force fully spent when the demurrer was overruled. Only the injunction *pendente lite* is of any concern here, and the providence of this order depends so completely upon the correctness of the ruling upon the demurrer that its consideration may well await disposition of assignments questioning the sufficiency of the complaint.

The assertion in the complaint that sec. 100.20 (1), Wis. Stats., is unconstitutional as constituting an invalid delegation of legislative power is not pressed by plaintiffs. Hence, we pass the point with the suggestion that this court in *Petition of State ex rel. Attorney General*, 220 Wis. 25, 264 N. W. 633, appears clearly to have settled the law contrary to plaintiffs' contention.

The first principal contention of plaintiffs is that the complaint states a cause of action because the state department of agriculture has no jurisdiction of the subject matter since plaintiffs' business is wholly in interstate commerce, subject to regulation only by federal authority and protected by the commerce clause of the federal constitution. This contention involves several questions. The first is whether plaintiffs' business is so wholly and completely within the field of interstate

commerce as to be out of the reach of the police power of the state. The second, which somewhat overlaps the first, is whether plaintiffs' business, although involving interstate commerce, has separable incidents which the state under the provisions of sec. 100.20, Wis. Stats., may regulate under the police power. The third is whether, assuming that plaintiffs' business has aspects that make it subject to the police power of the state, even so far as relates to interstate commerce, federal legislation governing unfair trade practices in interstate commerce and vesting the federal trade commission with administrative control over enforcement of this legislation renders sec. 100.20 inoperative for want of jurisdiction in the state or at least inapplicable to transactions involving interstate commerce. Plaintiffs' claim that they are solely engaged in interstate commerce is based upon the assertion that their sole business is selling eyeglasses; that while, for the convenience of customers, stores are maintained in this state, the glasses are made outside Wisconsin, all advertising contracts are made in Illinois, the title to the glasses passes in Illinois, delivery is directly to the customer by mail. It is claimed that the major part of the value of the glasses is in their grinding to individual prescriptions; that no essential part of plaintiffs' business is conducted in Wisconsin, except the taking of orders to be transmitted to its Chicago office. Plaintiffs treat, as relatively trivial and minor incidents to their business, the maintenance upon their premises under some sort of guaranty of a physician who, when necessary, examines eyes and issues prescriptions.

It appears to us that the question turns upon what essentially plaintiffs' business consists of. Considering the business as a whole, it appears to us that plaintiffs are engaged in furnishing a complete service in fitting glasses. This involves, (1) furnishing prescriptions when necessary; (2) preparation of lenses to fit the priscription of plaintiffs' doctor, or those brought in by the patient; (3) furnishing and fitting of a frame

for the lenses. Space is furnished in the store of plaintiffs to doctors to whom plaintiffs' customers are referred for the examination. While plaintiffs argue that these doctors are not employees, it is nevertheless true that they form an essential part of plaintiffs' scheme or manner of doing business. The frames are necessarily fitted in Wisconsin. While the rest of the work is done in Chicago, and while evidently for the purpose of bringing as much of their business as possible within the scope of "interstate commerce" the glasses are made in Chicago, title passes there, and delivery is directly to the purchaser of the glasses, it is evident that plaintiffs' local activities are something more than mere incidents to transactions in interstate commerce. In this connection see *Phœnix Nursery Co. v. Trostel,* 166 Wis. 215, 164 N. W. 995; *Browning v. Waycross,* 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828. To paraphrase the doctrine laid down in the *Browning Case,* it does not seem to us that the business of fitting and furnishing glasses to the individual needs of a patient or purchaser carried out through local retail stores with the assistance of local physicians and requiring the services of a local manager who understands the business to some extent, can be made into an interstate transaction and put beyond the reach of the state police power by arbitrarily designating the transaction a sale and ingeniously managing that the sale shall take place without the state. Such an argument exalts form at the expense of substance. We conclude that plaintiffs' business activities are subject to regulation by the state of Wisconsin so far as the methods of soliciting and conducting business here are concerned. In this respect, we think the case falls within the doctrine of *Savage v. Jones,* 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182. While under the cover of exercising its police power Wisconsin cannot undertake what amounts to regulation of interstate commerce, police regulations, reasonable in themselves, addressed to local activities and bearing a genuine relation to the welfare of people of this state, are not

invalid by reason of the fact that they incidentally affect interstate commerce.

We now reach a territory that offers some difficulty. Under the doctrine of the United States supreme court in cases involving labor disputes a generous view was taken of the powers of congress under the commerce clause. The fact that a concern was engaged with the same corps of workmen both in interstate and intrastate commerce, was held to warrant the conclusion that strikes, boycotts, and other labor troubles so proximately affected interstate commerce as to bring the labor relations of such concern within the jurisdiction of congress under the commerce clause. *National Labor Relations Board v. Jones & Laughlin Steel Corp.* 301 U. S. 1, 57 Sup. Ct. 615, 81 L. Ed. 893. Of course, this did not mean that everything done by such a concern was a transaction in interstate commerce, but simply that since its workmen were at least in part operating in that field, labor troubles would adversely affect the flow of interstate commerce. It is held, however, that while congress could, it had not so pre-empted the field as to deprive state labor relations acts, passed in the exercise of police power, of all vitality. *Allen-Bradley Local 1111 v. Wisconsin E. R. Board,* 237 Wis. 164, 295 N. W. 791. It is strongly implied and would seem beyond question that when the federal labor relations board actually takes jurisdiction of labor relations under the National Labor Relations Act that the state labor board and the state itself is completely ousted of jurisdiction. In this case there is a somewhat analogous situation. Congress has enacted title 15 USCA, § 45, which in substance prohibits unfair or deceptive methods of competition in business practices in interstate commerce, and commits the administration of the law to the federal trade commission. It is in substance contended that so far as unfair business practices in interstate commerce are concerned congress has pre-empted the field and that since sec. 100.20, Wis. Stats., deals with the same subject on

the same plane and there is nothing more than a duplication of the federal act it must be held suspended by reason of the occupation of the field by federal legislation. Plaintiff relies strongly upon *Paramount Publix Corp. v. Hill* (D. C.), 11 Fed. Supp. 478. In that case the Wisconsin department of agriculture and markets was proceeded against in the federal district court by twelve plaintiffs engaged in the distribution of motion-picture films and the exhibition of these films in the state of Wisconsin. An injunction was sought to restrain enforcement of the same section of the statutes as is involved in this case and to enjoin a hearing or any other proceedings under the statute. Charges against the plaintiffs by the department of agriculture had solely to do with monopolistic practices and other items of alleged unfair competition. It was held by a three-judge court that the state law had no efficacy; that plaintiffs' business was interstate in character; that while Wisconsin might control the safety of, or orderly conduct in theaters, regulate the character of exhibitions in the interests of good morals or deal with other like incidentals, it would not enforce a statute which by its very terms is a mere trade regulation when every detail of the field of trade regulations is governed by national legislation. This decision gives us some concern. We should feel concluded by it, were it not that plaintiffs' business is substantially local and intrastate in character, and only formally or incidentally involves interstate commerce at all. It appears to us that there is no evidence in the Federal Fair Trade Practice Act of an intention to exclude state control over the unfair practices of a concern that is essentially local in its operation, merely because some of its transactions considered separately constitute interstate commerce.

We consider that the state may regulate the trade practices of such businesses, subject, perhaps, to a loss of jurisdiction where the federal trade commission in a particular case has undertaken regulation within the federal act. Thus, in the

present case, if it appeared that the federal trade commission had already taken jurisdiction over the practices sought to be dealt with by the state department of agriculture, a conflict might exist because both departments would be attempting to deal with the same conduct of plaintiffs. In such a situation, no doubt, the state would have to yield. We do not consider that an allegation has been made of any circumstance effective to oust defendants of jurisdiction, and we conclude that the commerce clause and the enactment of the Federal Fair Trade Practice Act are not enough in themselves to destroy the jurisdiction of the department of agriculture.

In the *Paramount Case, supra,* the situation was widely different. There the business of selling and shipping films was clearly and essentially an interstate operation also involving rights under the copyright laws. It was conceded in that case that as to conduct of the local establishment and as to the nature of local exhibitions the state police power had full sway and it was only as to purely interstate and copyright aspects that the state department of agriculture was seeking to regulate. Here, the business of plaintiffs is as we hold an essentially local and intrastate one, and only incidentally affects interstate commerce. We consider that this distinction renders inapplicable the *Paramount Case.*

It is next contended that the complaint states a good cause of action for equitable relief because of the allegation there that plaintiffs had received neither notice of hearing nor copy of the complaint. It is admitted in the complaint that service was had upon Dare and Smith, employees of the plaintiffs, and that notice and complaint were served upon Graves, Nixon, and Erdlitz, each of whom is a physician occupying a place in one of the stores of plaintiffs. We are not impressed with this contention. Plaintiffs received the notice and complaint from some source. There is no claim that they were not in a position to appear and make a defense, and apart from this, if by reason of any of the circumstances of notice the

proceedings are void or the commission without jurisdiction over the defendant, plaintiffs have an adequate legal remedy and there is no occasion to grant injunctive relief. From the record it appears to us that the plaintiffs are attempting to transmute a technical right into a substantial equity which cannot be done.

It finally becomes necessary to consider the effect of allegations which, construed as liberally as the context will allow, amount to assertions that there exists an unlawful conspiracy between the state department of agriculture and the State Association of Optometrists to permit the latter to control, foster, and prosecute the inquiry; that the state department is prejudiced; that the department has already made up its mind as to the truth of the charges which it makes and that plaintiffs will be unable to secure a fair trial or hearing. While a contention that this ought to be a basis for equitable relief is plausible, we think that it cannot be sustained. If by a complaint setting forth the bias, prejudice, or even corruption of the state administrative board, a party may have an injunction, not merely against administrative action by the board, but even against a hearing by the board, a potent weapon for the complete destruction of the administrative process is in the hands of a court of equity. No such course of action is contemplated by statutes which have set up remedies for the review of administrative action by courts. These statutes do not contemplate that in advance of a hearing there shall be any such impeachment of the administrative body as is attempted here. In *Myers v. Bethlehem Shipbuilding Corp.* 303 U. S. 41, 58 Sup. Ct. 459, 82 L. Ed. 638, the court said in reference to a contention that a hearing before the labor relations board would subject it to irreparable damages:

"So to hold would, as the government insists, in effect substitute the district court for the board as the tribunal to hear and determine what congress declared the board ex-

clusively should hear and determine in the first instance. The contention is at war with the long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . Obviously, the rule requiring exhaustion of the administrative remedy cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage."

Neither do we think that the statute may be circumvented by allegations going to the bias, interest, or even to the corruption of the administrative tribunal. These are matters which may be urged at the proper time and place in seeking a review of the action of the administrative body. See *Buehler Bros. v. Industrial Comm.* 220 Wis. 371, 265 N. W. 227; *Pellett v. Industrial Comm.* 162 Wis. 596, 156 N. W. 956; *General A. F. & L. Assur. Corp. v. Industrial Comm.* 223 Wis. 635, 271 N. W. 385. What was heretofore said applies to a positive allegation of fact in these respects. It applies with greatly multiplied force when the allegation is one merely on information and belief. *Folding Furniture Works v. Wisconsin L. R. Board,* 232 Wis. 170, 285 N. W. 851, 286 N. W. 875; *State ex rel. Madison Airport Co. v. Wrabetz,* 231 Wis. 147, 285 N. W. 504, are cited by plaintiffs in support of the proposition that they are entitled to proceed in equity for an injunction. These cases have no application to attempts to enjoin a hearing by an administrative board. They apply to cases where a denial of due process upon a hearing does not appear in the record in such a manner as to be reviewable by the statutory process of review. In such cases the statutory provisions for review offer an inadequate remedy and resort to equity is permitted. It seems to us that these have no application whatever here.

For the foregoing reasons we conclude that the trial court was in error in overruling defendants' demurrer. Since no

cause of action is stated it follows that there should be no injunction *pendente lite*.

*By the Court.*—Orders reversed, and cause remanded with direction to sustain defendants' demurrer, to dissolve the injunction *pendente lite* and for further proceedings according to law.