RITHOLZ and others, Respondents, vs. JOHNSON and others, Appellants.

*December 9, 1943—January 18, 1944.*

For the appellant Wisconsin Board of Examiners in Optometry there was a brief by the *Attorney General* and *Warren H. Resh*, assistant attorney general, and oral argument by *Mr. Resh*.

For the respondents there was a brief by *Gordon, Law, Brody & Johns* of La Crosse, and oral argument by *Lawrence J. Brody*.

A brief was also filed by *Richardson, Reeder, Stearns & Weidner* and *Kaumheimer, Alt & Likert*, all of Milwaukee, as *amici curiæ*.

ROSENBERRY, C. J.    In the view that we take of this matter, it is not necessary to state in detail all of the facts set out in the plaintiffs' complaint.    It appears from the complaint that the plaintiffs are copartners residing in Chicago and are engaged in Wisconsin in the retail sale of eyeglasses on prescription in various cities.    Details of the plan upon which they

conduct their business are to be found in *Ritholz v. Ammon* (1942), 240 Wis. 578, 4 N. W. (2d) 173. The defendants are the persons who compose the Wisconsin Board of Examiners in Optometry and the sheriff, Stanley C. Olson, in his official capacity.

It is alleged: "That in the cities of Appleton, Madison, Milwaukee and La Crosse in the state of Wisconsin, the plaintiffs have opened retail stores for the conduct of their business and for the purpose of merchandising and selling optical supplies to purchasers upon prescription of optometrists. That the business conducted in each of the cities named is devoted exclusively to the sale of such supplies and is not connected in any way with the practice of optometry and that none of their agents or servants or store managers within the state of Wisconsin have ever been engaged as such optometrists, and have never attempted to treat eyes for disease or injury, and have never attempted to prescribe any type of eyeglass for any patron or customer."

The complaint then sets out the facts relating to the enactment and publication of ch. 273, Laws of 1943. The material parts are printed in the margin.[1]

It is further alleged that said statute "is unconstitutional and invalid in so far as it deprives these plaintiffs as tradesmen and merchants of their right to truthfully and fairly advertise their merchandise and the prices and descriptions of

[1] 153.10 *Prohibited advertising.* It shall be unlawful for any person to advertise either directly or indirectly by any means whatsoever any definite or indefinite price or credit terms on lenses, frames, complete glasses or any optometric services; to advertise in any manner that will tend to mislead or deceive the public; to solicit optometric patronage by advertising that he or some other person or group of persons possess superior qualifications or are best trained to perform the service; or to render any optometric services pursuant to such advertising.

153.12 *Construction; severability.* This chapter is passed in the interests of public health, safety and welfare and its provisions shall be liberally construed to carry out its objects and purposes. If any section of this chapter, or any part thereof, shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair, or invalidate the remainder of any other section or part thereof.

the same, and that it attempts to deprive these plaintiffs of the right and privilege possessed by the other retail merchants of the state of Wisconsin, and is discriminatory and unfair to the plaintiffs. That it is an arbitrary and unlawful invasion of the rights of these plaintiffs as citizens guaranteed by the federal and Wisconsin constitutions, and that it interferes and restricts the rights of these plaintiffs to freely engage in trade and commerce, the right to advertise being necessarily a part of free enterprise itself, and that the said act attempts to discriminate and segregate from all merchants of the state of Wisconsin the one class of merchants to which these plaintiffs belong."

Paragraphs sixth, seventh, eighth, ninth, tenth, and eleventh relate to the damages which the plaintiffs have sustained and the injury to their business through the threatened enforcement of the provisions of ch. 153, Stats., by the defendants or some of them.

The plaintiffs pray judgment that the defendants be perpetually enjoined from the enforcement of the provisions of said chapter. Upon the complaint there was issued by a court commissioner in La Crosse county an order restraining the defendants, their agents, and servants from causing the arrest of or interfering in any way with the advertising of the plaintiffs' merchandise prices in any paper, over any radio, or in any periodical pending the trial of the issues.

This case is here upon a general demurrer to the plaintiffs' complaint which quite obviously states only those facts which in the opinion of the plaintiffs tend to support their claim that the statute is unconstitutional. The fact that this court has no knowledge or information of the business in which the plaintiffs are engaged compels us to consider a matter of constitutional law which we have not heretofore definitively dealt with.

Attention is directed to the fact that a general demurrer to the complaint in an action challenging the constitutionality of a statute does not admit the allegations of the complaint to be

true. *State ex rel. Scanlan v. Archibold* (1911), 146 Wis. 363, 370, 131 N. W. 895. The question then arises, what facts may the court properly consider in determining whether a statute is constitutional? In *State ex rel. Attorney General v. Cunningham* (1892), 81 Wis. 440, 508, 51 N. W. 724, the court held that—

"In order that the court may be justified in declaring an act of the legislature void, the repugnance between it and the express provisions of the constitution and those limitations necessarily or conclusively implied from it must be clear and irreconcilable; and in all matters of unlimited discretion, or involving only considerations of public policy, the determination of the legislature is final and conclusive on the courts.

. . .

"An issue of fact cannot be framed and tried by a jury or otherwise with a view of determining by its result the validity of an act of the legislature, but the court is to be confined to matters of which it may take judicial notice; for otherwise a jury might find on the issue one way today, and another way tomorrow, and this would beget a distressing condition of uncertainty."

In *State ex rel. Scanlan v. Archibold, supra,* it was held—

"The law must be tested as to its constitutionality by its language in the light of such matters as the court will take judicial notice of."

In *State ex rel. Kellogg v. Currens* (1901), 111 Wis. 431, 438, 87 N. W. 561, the court said:

"The reasons for a given statute are for the legislature, if there are any which can fairly have weight. They are not for the courts. The latter have no control over the validity of a law unless they can say with substantial certainty that no argument or consideration of public policy exists which could have weight with any reasonable and honest man. If any such argument or reason can be suggested, its weight or sufficiency is not debatable in the courts. The existence of legitimate and adequate reasons for any law should not lightly be denied. Human minds differ, and what may seem inadequate or ir-

relevant to one may seem cogent to another. One is not justified, therefore, in assuming that all who differ from him are unreasonable or are not acting in good faith. It is from such considerations as these that the courts have laid down for themselves the rule that only in a clear case—clear beyond reasonable doubt—will they venture to assert that a law is without reason to support either its purpose or the classifications it may make."

This general rule underwent some modification in the case of *State ex rel. Carnation M. P. Co. v. Emery* (1922), 178 Wis. 147, 159, 189 N. W. 564. The action was an original one in this court and was brought by the plaintiff to enjoin the state from enforcing ch. 409, Laws of 1921, so far as that law sought to prohibit the sale by the plaintiff of a product known as "Hebe." Upon the filing of a complaint an answer was served raising certain issues of fact which were referred to a referee to hear and report his findings. The referee filed findings in due course and found that hebe was not a harmful or deleterious food. The case was argued to the court upon the pleadings and the findings made by the referee. The court held:

"The findings of the referee are not conclusive on the court. They may be considered only to refresh the memory of the court as to matters of which the court will consider as common knowledge and of which it takes judicial notice, or for the purpose of bringing to the attention of the court scientific facts which would otherwise devolve upon the court undue labor.

"If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court."

The court then set forth a statement of facts from which it was held that the legislature might reasonably infer that—

"the manufacture and sale of the compounds in question were conducive to fraud and deception and likely to be injurious to the public health,"—

and on that ground held the act valid. The facts upon which the court based its decision were not the facts as found by the referee.

To what extent was the former rule modified by the decision in *State ex rel. Carnation M. P. Co. v. Emery, supra?* While the court said that all facts necessary to sustain the act must be taken as conclusively found by the legislature if any such facts may be reasonably conceived in the mind of the court, it is not to be understood as saying that the necessary facts are to be conclusively presumed in every case, nor is the existence of necessary facts to be left wholly to the imagination of the court, however fertile it may be.

While it is held that a challenged statute is to be considered in the light of the facts of which the court will take judicial notice, it is true, as has often been said, that the facts of which the court may take judicial notice and the facts of which the court has judicial knowledge are two very different things. How is the court to ascertain the facts of which it will take judicial notice? It is said in the opinion that it may consider the findings of the referee for the purpose of refreshing its memory. Refreshing their memory is hardly a proper description of the practice which courts have followed for a very long time. It might better be described as informing itself in regard to the pertinent facts which are matters of common knowledge. Matters of common knowledge are not limited to those matters of which practically everyone has knowledge. In a complex society such as ours there are in many fields of activity matters which are within the knowl-

edge of all those who are associated with the activity of which the general public knows little or nothing. For instance, in the railroad business hundreds of thousands of people are employed. No doubt many things are matters of common knowledge and are assumed and acted upon by those engaged in the business daily if not hourly. In a case involving some phase of the railroad business a court might well inform itself as to those matters. It may do this by resort to encyclopedias, authoritative works upon the subject, reports of committees, scientific bodies, and any source of information that is generally considered accurate and reliable, or it may as in *State ex rel. Carnation M. P. Co. v. Emery, supra,* resort to a judicial investigation of the facts. As ordinarily considered, taking judicial notice does not include these methods of obtaining knowledge of matters of which the court may take judicial notice but of which it has no knowledge.

The process by which the court may inform itself of these facts is in no way equivalent to the establishment of a custom in the course of ordinary litigation. Courts are not concluded either by the findings of juries, courts, or referees. The whole process is merely an informative one and *sui generis.*

This must be true because in many fields, as was pointed out in *State ex rel. Attorney General v. Cunningham, supra,* facts may be found one way today and another way tomorrow. When it appears from the information at hand that the facts are such as to render the conclusion to be drawn therefrom fairly debatable, the matter is for the determination of the legislature and the court may not set up its judgment against a legislative determination.

There is a great contrariety of decision in the courts of this country upon this question. The greater weight of authority at the present time is to the effect that a court has not only the right but the duty to be informed or to inform itself in some appropriate way in regard to the facts involved in a case where the constitutionality of a statute has been challenged.

The matter was given thorough consideration and passed upon by the supreme court of the United States in the case of *United States v. Carolene Products Co.* (1938) 304 U. S. 144, 58 Sup. Ct. 778, 82 L. Ed. 1234. (There is a valuable note to this case in 82 L. Ed. 1244.) While there was a division of opinion with respect to the matter, the court held, Chief Justice STONE speaking for the court:

"We may assume for present purposes that no pronouncement of a legislature can forestall attack upon the constitutionality of the prohibition which it enacts by applying opprobrious epithets to the prohibited act, and that a statute would deny due process which precluded the disproof in judicial proceedings of all facts which would show or tend to show that a statute depriving the suitor of life, liberty or property had a rational basis.

"But such we think is not the purpose or construction of the statutory characterization of filled milk as injurious to health and as a fraud upon the public. There is no need to consider it here as more than a declaration of the legislative findings deemed to support and justify the action taken as a constitutional exertion of the legislative power, aiding informed judicial review, as to the reports of legislative committees, by revealing the rationale of the legislation. Even in the absence of such aids the existence of facts supporting the legislative judgment is to be presumed, for regulatory legislation affecting ordinary commercial transactions is not to be pronounced unconstitutional unless in the light of the facts made known or generally assumed it is of such a character as to preclude the assumption that it rests upon some rational basis within the knowledge and experience of the legislators.

. . .

"Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, *Borden's Farm Products Co. v. Baldwin,* 293 U..S. 194 [79 L. Ed. 281, 55 Sup. Ct. 187], and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist. *Chastleton Corp. v. Sinclair,* 264 U. S. 543 [68 L. Ed. 841, 44 Sup.

Ct. 405]. Similarly we recognize that the constitutionality of a statute, valid on its face, may be assailed by proof of facts tending to show that the statute as applied to a particular article is without support in reason because the article, although within the prohibited class, is so different from others of the class as to be without the reason for the prohibition, *Railroad Retirement Bd. v. Alton R. Co.* 295 U. S. 330, 349, 351, 352 [79 L. Ed. 1468, 1476, 1477, 55 Sup. Ct. 758, and other cases], though the effect of such proof depends on the relevant circumstances of each case, as for example the administrative difficulty of excluding the article from the regulated class. *Carmichael v. Southern Coal & Coke Co.* 301 U. S. 495, 511, 512 [81 L. Ed. 1245, 1254, 57 Sup. Ct. 868, 109 A. L. R. 1327, and other cases]. But by their very nature such inquiries, where the legislative judgment is drawn in question, must be restricted to the issue whether any state of facts either known or which could reasonably be assumed affords support for it."

The facts set out in the plaintiffs' complaint in this case are those which sustain the plaintiffs' claim that the statute is unconstitutional as applied to their particular business. This court has no knowledge of the facts relating to a business such as that conducted by the plaintiffs, nor has it any satisfactory method of informing itself by resort to reports of committees, encyclopedias, or other like sources of information. In this case an answer should be filed setting up the facts which the defendants claim warranted the enactment of this particular legislation. If there is a dispute as to the facts, the facts should be ascertained by a judicial investigation in the trial court. While neither this court nor the trial court will be bound by the facts so found, they will have relevant information now denied to them. Upon this ground and only upon this ground we now hold that the demurrer to the complaint in the trial court was properly overruled.

When the motion to dissolve the temporary injunction came on for hearing, affidavits were filed in support of the motion and in opposition to it. Without making any findings or as-

signing any reason therefor, the trial court denied the motion of the defendants to dissolve the temporary injunction. It is considered that this was error. There is a class of cases, most of which are actions in which the rights of a citizen guaranteed by the bill of rights have been invaded, in which a temporary injunction may properly be issued suspending the operation of a statute until final hearing. This case is not one of that class. This is a regulatory law enacted by the legislature in the exercise of its police powers regulating a business which in the opinion of the legislature is required for the general welfare and the health of the community.

There is no showing in this case that warrants a court in suspending the operation of a statute and there is certainly none which warrants or authorizes a court commissioner in doing so. We again call attention to the decision in *Milwaukee Horse & Cow Comm. Co. v. Hill* (1932), 207 Wis. 420, 241 N. W. 364, which admonition was repeated in the case of *Ritholz v. Ammon* (1942), 240 Wis. 578, 4 N. W. (2d) 173. The trend of decision in other jurisdictions sustaining statutes of somewhat the same nature taken together with the presumption which obtains as to the constitutionality of a legislative enactment does not entitle the plaintiffs to the aid of a court of equity to continue their business in violation of the statute pending a final determination of the issue in this case.

Until the whole case is before us we shall not set out or discuss any of the facts. We are clear that under all the facts and circumstances presented the temporary injunction was improvidently granted.

*By the Court.*—So much of the order as overruled the defendants' demurrer is affirmed. So much of the order as denied the motion to dissolve the temporary injunction is reversed, and the cause is remanded with directions for further proceedings according to law and the trial court is directed to enter an order vacating the temporary injunction.