RITHOLZ and others, Respondents, vs. JOHNSON and others (WISCONSIN BOARD OF EXAMINERS IN OPTOMETRY), Appellants.

*January 16—February 13, 1945.*

For the appellant Wisconsin Board of Examiners in Optometry there was a brief by the *Attorney General* and *Warren H. Resh,* assistant attorney general, attorneys, and *Leo F. Nohl* of Milwaukee of counsel, and oral argument by *Mr. Resh.*

For the respondents there was a brief by *Gordon, Law, Brody, Johns & Roraff* of La Crosse, and oral argument by *Leonard F. Roraff.*

A brief *amici curiæ* was filed by *Richardson, Reeder & Weidner* and *Kaumheimer, Alt & Likert,* all of Milwaukee.

FOWLER, J. The plaintiffs are partners doing business as Optical Stores Company, and bring the action to enjoin the Wisconsin Board of Examiners in Optometry from bringing actions to enforce sec. 153.10, Stats., on the ground that it is void as violative of the Fourteenth amendment of the United States constitution. The case was before the court in 244 Wis. 494, 12 N. W. (2d) 738. The court declined to pass upon its constitutionality under the Fourteenth amendment except upon evidence to show how the practices banned by the statute affected the public health, safety, or welfare because it could not take judicial notice of these practices. The order overruling the demurrer was upheld and the case remanded to the circuit court for further proceedings. The defendants then answered and the case was tried before Circuit Judge COWIE who made findings upon which judgment was entered declaring the statute unconstitutional and enjoining the defendants from enforcing it. That judgment is now before us for review.

The statutes involved read as follows:

"153.10 *Prohibited advertising.* It shall be unlawful for any person to advertise either directly or indirectly by any

means whatsoever any definite or indefinite price or credit terms on lenses, frames, complete glasses or any optometric services; to advertise in any manner that will tend to mislead or deceive the public; to solicit optometric patronage by advertising that he or some other person or group of persons possess superior qualifications or are best trained to perform the service; or to render any optometric service pursuant to such advertising.

"153.12 *Construction, severability.* This chapter is passed in the interests of public health, safety and welfare and its provisions shall be liberally construed to carry out its objects and purposes. If any section of this chapter, or any part thereof, shall be adjudged by any court of competent jurisdiction to be invalid, such judgment shall not affect, impair or invalidate the remainder of any other section or part thereof."

The answer filed by the appellants alleges the following practices of the plaintiffs as justifying sec. 153.10, Stats.: The plaintiffs have long used and are now using advertising for the purpose of deceiving and defrauding the public; their advertising is calculated to and does represent that persons can obtain suitable glasses at the advertised price, when there is no intent to sell suitable glasses at such price; that they advertise complete glasses at stated prices, without any limitation as to type, quality, or corrective characteristics, knowing that suitable glasses cannot be furnished without measurements of defects by a person licensed to do so.

The gist of the trial court's decision is stated by him in his opinion as follows:

"The evidence at the retrial showed that the plaintiffs are not optometrists or members of any profession, but are ordinary merchants and craftsmen. It was not established upon this hearing that the plaintiffs are in any way connected with the practice of optometry and none of their agents, servants or store managers within the state of Wisconsin have been engaged as optometrists and have never attempted to treat

eyes for disease or injury, nor attempted to prescribe any eyeglasses for any patron or customer.

"The evidence discloses that certain advertising of complete glasses for $3.45 or some other stated price was issued by the plaintiffs, but that in all cases the patron or customer was obliged to submit to an eye test by an optometrist or eye doctor and upon his prescription the advertised glasses were sold to the customer or not, depending upon whether the condition of his vision was such that the advertised lens could be used."

Findings were prepared by counsel for plaintiffs at the court's direction and signed by the trial judge that omit some features of the picture which we will stress in our opinion. The trial judge was "unable to find in any of the testimony that there was any fraud practiced upon any of the plaintiffs' customers or that they [the plaintiffs] are in any way engaged in any branch of the medical profession or optometry." The conclusion of law was that the statute involved "is unconstitutional and void in that it deprives the plaintiffs of their right to advertise the prices and descriptions of their merchandise, and that it is an arbitrary and unlawful invasion of the rights of the plaintiffs as guaranteed by the federal and state constitutions." We are of opinion that under the decisions of like cases and the undisputed facts hereinafter stated the conclusion of the trial judge and the judgment of the court are erroneous.

The constitutional question here involved was really decided by this court in *Modern S. Dentists v. State Board of D. Examiners,* 216 Wis. 190, 196, 256 N. W. 922, which held constitutional ch. 152, Stats. It delegated to the state board of dental examiners the power to make rules conformable to the provisions of the chapter regulating the practice of dentistry. The plaintiff there brought action to restrain enforcement of the board's rules. The court held the chapter valid, citing and adopting the rule and reasoning of *Semler v. Oregon State Board of Dental Examiners,* 148 Or. 50, 34 Pac. (2d) 311;

294 U. S. 608, 55 Sup. Ct. 570, 79 L. Ed. 1086. The question of constitutionality, there as here, depended on whether the things prohibited contravened the Fourteenth amendment. Rules of the board which especially prohibited advertising essentially the same as the advertising here involved were upheld by this court. The court upheld rules, (1) banning "any advertising of a character tending to mislead the public;" and (2) "the advertising of particular services or appliances at a price 'From —— Dollars up.'" These rules were upheld as within the provisions of sec. 152.06 (6), Stats., defining as unprofessional conduct, (a) "Any advertising statements of a character tending to deceive or mislead the public" and (c) "advertising definite, fixed prices when the nature of the professional service rendered and the materials required must be variable." The instant statute prohibits advertising that tends to "deceive or mislead the public" and advertising any definite price on "complete glasses." The advertising instantly involved just as clearly tends to deceive and mislead the public into believing that complete glasses to suit their needs can be procured for $3.45 as a dentist advertising "particular . . . appliances [complete dentures] at a price 'From —— Dollars up.'" in the dentist's case.

It is here claimed that the dentist case is not in point because dentistry is a profession and selling glasses is mere merchandising. But by their own advertising the plaintiffs profess to do more than merely sell glasses. They advertise to sell glasses to fit the needs of the public. That requires under ch. 153, Stats., the services of a person licensed to practice either optometry or medicine. Neither of these is mere merchandising. The basis of the rule applicable to dentists is, not that they are professional men, but that the advertising prohibited to them tends to deceive and mislead the public, and the reason of the rule is as applicable here as there. The instant statute does not purport to affect mere merchandising of glasses that does not require the services of an optometrist

to prescribe them. The plaintiffs may sell glasses that aid sight by merely magnifying, or protect against excessive sunlight. So they may sell stock glasses where the customer fits himself by trying on glasses in the seller's stock on hand.

We do not have to rest the constitutionality of the statute wholly upon the dentist case, *supra*. The evidence in this case shows that the advertising used by the plaintiffs actually does operate to defraud the public. The customers of plaintiffs are mostly poor persons. The plaintiffs by their own testimony aim to advertise where their advertisements will reach "workers, foreigners and negroes" particularly. They use the advertisement as a lure or bait, or as they call it "an inducement" to draw such persons to their stores. The general nature of their advertising is shown by the photostatic copy of an advertisement printed herewith. Note the following in the photostat: "$12.00 value $3.88;" "at the low price of only $3.88;" "get the glasses you need at prices you can afford;" "no extra cost;" "FREE;" "no extra charge." This on its face is dishonest advertising. It manifestly aims and tends to mislead the public within the rule of *Semler v. Oregon State Board of Dental Examiners, supra,* and *Commonwealth v. Ferris,* 305 Mass. 233, 25 N. E. (2d) 378, and is therefore fraudulent advertising.

From the testimony of the general sales manager of the plaintiffs, located in Chicago, it appears that the plaintiffs have about eighty stores, five of them in Wisconsin. They sell glasses on the prescriptions of optometrists and physicians, both of whom are licensed in Wisconsin to examine for and prescribe glasses to correct defective vision. A doctor is kept in the store to prescribe glasses for the plaintiffs' customers. The plaintiffs "make arrangements with a physician" to occupy a room in their store. He fixes his own price for examining for and prescribing glasses, usually $1, sometimes $2, but they guarantee him a specific amount as fees for a specific period. The nature of this "arrangement" is illustrated by the

# BIFOCAL SALE!

## THIS WEEK

## SENSATIONAL OFFER!

**Double Vision Bifocal Glasses for Near and Far Vision — Seamless, One-Piece, Invisible. The buy of the year. Don't fail to take advantage of this amazing bargain.**

**BIFOCAL DOUBLE VISION GLASSES.........................** ~~$12.00~~ Value **$3.88**

We offer this opportunity to our fellow townsmen and neighbors to get Double Vision Bifocal glasses (for *far and near vision* in the same pair of glasses), at the low price of only $3.88. These beautiful rimless glasses are complete with Toric stock Bifocal lenses and engraved Rhodium finish mounting. Take advantage of this unusual offering to get the glasses you need at prices you can afford.

### Largest Opticians in America

We have the largest chain of optical parlors in the country. Our numerous branches in many of the principal cities of the country offer better glasses at lower prices to people everywhere. Our volume purchasing power makes it possible for our prices to be so low. However, only the price is low—there is no sacrifice of service or quality.

### Millions Satisfied

The principals of this firm have been in the optical business for more than a third of a century. They have supplied glasses to millions of men, women and children. They can satisfy you too. All glasses sold by us are ground by expert optical artisans on prescriptions of licensed Doctors.

### Easy Payments — No Extra Cost

Don't neglect getting needed glasses because of shortage of ready cash. Use our credit plan. No co-signers, no interest, no carrying charges. No extra cost of any kind. Pay a little down, a little per week. Make your own terms.

**CREDIT IF DESIRED NO EXTRA CHARGE**

### REPAIRS

Broken lenses duplicated, frames repaired — replaced. Oculists' prescriptions filled. Lowest factory prices.

## FREE!

Your glasses straightened, and adjusted without charge, regardless of where you purchased them.

### IRON CLAD MONEY BACK GUARANTEE

We guarantee to please you in every way. You must be satisfied, and you are the sole judge—or your money will be refunded.

## NATIONAL OPTICAL STORES CO.
### ·LARGEST OPTICIANS IN AMERICA·

## 2338 NORTH THIRD STREET
### 742 N. Plankinton, MILWAUKEE, WIS.
### OPEN FRIDAY NIGHTS ONLY TO 9:00 P. M.
*Stores in Many Principal Cities of the United States*

**OVER 3,000,000 CUSTOMERS**      *Special Rates to Service Men*

**No 10% Federal Tax on Glasses**

following postal card sent out by plaintiffs to physicians who were to occupy "space" in the plaintiffs' stores:

"June 17, 1941.

"Dear Doctor: I would like to enter into an arrangement with you, requiring your full-time service away from your office. If you are willing to leave town, we can offer you a definite guarantee of $40 per week, with a chance to make as high as $75 per week, refracting patients we recommend to you. Office space is provided. This is a permanent arrangement. The proposition is in Wisconsin. No experienced required.

"If interested, call, write, or wire collect.

"B. MIGDAL,
"Rolfe Hotel,
"Oshkosh, Wis."

The card was mailed to Dr. George Lenn, 305 Walnut, Green Bay, Wisconsin, by an authorized agent of the plaintiffs. The "arrangement" constitutes the physician an "employee" of the plaintiffs. *National Optical Stores Co.* (these plaintiffs) *v. Bryant,* — Tenn. —, 181 S. W. (2d) 139. By the testimony of plaintiffs' general sales agent when a customer arrives he is ushered into a room occupied by a doctor employed by the plaintiffs who proceeds to make the examination of the customer's eyes. When the doctor has completed his examination, he writes out what he calls a prescription and demands $1, or in some cases, $2 for it. If the customer protests the fee on the ground that the advertisement pursuant to which he came to the store represented that there would be "no extra charge" for examination, the doctor answers, under instruction from the plaintiffs, that the fee is not for the glasses but for the prescription. This is on its face a mere subterfuge. Nearly all customers fall for it and pay the fee. A plain bare fraud is thus worked. If a customer still objects he is served without the payment, if possible. The aim and practice of the plaintiffs, as shown by the testimony of the plaintiffs' sales manager and the "Manual of In-

struction" to their salesmen, is to sell the customer the highest-priced glasses and frames possible to foist upon him even though the complete glasses advertised at the price of $3.45 or $2.87, as the case may be, would supply his need as well. This, in case of a customer who is wealthy or well to do may be mere good salesmanship, but it is against the public welfare when it is done to the poor or class of customers whom the plaintiffs mostly serve who generally need all the money they have for the bare necessities of life. And so as to filching a dollar for the examination from the class of customers with whom the plaintiffs mostly deal.

When such advertising as is here involved so results, as it is shown in this case actually to result, the statute as a whole cannot be held void, or all prosecutions for enforcement of it be enjoined even though some of their advertising may not contravene the statute. This is especially so under sec. 153.12, Stats., above quoted, which provides that invalid provisions shall not affect the portions of sec. 153.10 that are valid. It was so held in case of a section like sec. 153.12 in the dentist's case, *supra*.

The above is sufficient to require reversal herein, but brief discussion of a few cases will show ample authority for our position. The *Oregon Case, supra,* banned dentists from "advertising prices for professional services," and "advertising any free dental work or free examination" and "making use of any advertising statements of a character tending to deceive or mislead the public." The plaintiff advertised "prices that he would charge for various services to be rendered" and that he made examinations for prospective patients without making any charge therefor.

This court in its case of *Modern S. Dentists v. State Board of D. Examiners, supra,* did not quote from the *Oregon Case, supra,* but expressly adopted its reasoning and deemed more than mere reference to it unnecessary as mere reiteration. But to show the application of the reasoning of the *Oregon Case,*

which this court adopted to the instant case, we will quote briefly from the opinion. We refer above to the fact that the plaintiff, who sought to enjoin the Oregon board of dental examiners from revoking his license to practice for advertising in contravention of the Oregon statute, conceded that advertising could be prohibited that operated as a fraud on the public. That concession was forced by the consensus of court opinion, based upon *Dent v. West Virginia,* 129 U. S. 114, 9 Sup. Ct. 231, 32 L. Ed. 623, wherein it is said at page 122:

"The power of the state to provide for the general welfare of its people authorizes it to prescribe all such regulations as, in its judgment, will secure or tend to secure them against the consequences of ignorance and incapacity as well as of deception and fraud."

Of the advertising involved in the *Oregon Case, supra,* the opinion says of advertising prices and free examinations (p. 57):

"Does the kind of advertising prohibited afford the unscrupulous practitioner a means of perpetrating fraud and deception upon his patients? In itself, there is nothing harmful in merely advertising prices for dental work, or in displaying glaring signs illustrating teeth and bridge work, but who will doubt that practitioners not willing to abide by the ethics of their profession often resort to such advertising methods to lure the credulous and ignorant members of the public to their offices for the purpose of fleecing them."

This applies to the instant case as aptly as it applied to the *Oregon Case, supra,* and our own dentist's case, *supra.* Of the rule of that case the supreme court of the United States said, page 612 (294 U. S. 608, 612, 55 Sup. Ct. 570, 79 L. Ed. 1086): "We do not doubt the authority of the state to estimate the baleful effects of such methods [of advertising] and to put a stop to them. The legislature was not dealing with traders in commodities, but with the vital interest of pub-

lic health." Furnishing glasses as much affects the public health as does furnishing dentures.

The case of *Commonwealth v. Ferris, supra,* is that of a dispensing optician who claimed to be an ordinary trader as do the instant plaintiffs. He advertised "eyeglasses complete! White single-vision lenses and frames. Complete for only $5." A Massachusetts statute provided that no person in connection with the sale of eyeglasses, lenses, or eyeglass frames should include in any advertisement any statement advertising "complete eyeglasses including lenses at a fixed price," and made violation of it a misdemeanor. The defendant was prosecuted for violation of the statute, one count of which was for the advertisement quoted. He was convicted on that count, and the conviction was sustained on the ground that where the public are not cautious or watchful in their buying habits, and are likely to be misled, the legislature may prohibit advertising not only to prevent intent to deceive but to prevent misunderstanding.

*Ritholz v. Arkansas State Board of Optometry,* 206 Ark. 671, 177 S. W. (2d) 410, was brought by the board to enjoin the instant partnership from practicing optometry on the ground that they were violating the state optometry statute. The conduct of the plaintiff there involved was substantially the same as that involved here. One of the advertisements there used was "all glasses sold by us are ground by expert optical artisans in our modern laboratory on prescription of a licensed doctor." It is said in the opinion, page 411: "This is inconsistent with the claim that National engaged exclusively in merchandising." The opinion further states:

"The salaried physician (who also maintained an independent office at 319½ Main street) contracted with Ritholz and his associates, to rent ninety-six square feet of office space occupied by National, payment to be $35 per month. This contract, *prima facie,* merely creates the relationship of landlord and tenant. Affirmative expressions were used in a seem-

ing effort to emphasize what the Ritholzs now contend to have been the purpose—that is, merely to provide convenient office quarters for the physician in order that National customers might be accommodated if on their own initiative they elected to have professional assistance in those instances where advice of an optometrist was required. The contract physician testified that he charged $1 for examinations and received a commission of twenty per cent on certain sales of glasses after examinations had been made by him at his office in the adjoining block. Compensation thus realized and that received from his private practice amounted to approximately $500 per month as distinguished from the former salary of $40 per week. He did the National's work exclusively."

This was held to be collusive and to constitute the doctor an employee of the partnership. Upon like reasoning the plaintiffs here were rendering optometric services pursuant to their advertising.

In *City of Springfield v. Hurst,* 144 Ohio St. 49, 56 N. E. (2d) 185, decided in August, 1944, an ordinance was upheld which prohibited the advertisement of the price at which eyeglasses may be sold against the contention that it contravened the Fourteenth amendment and an Ohio constitutional provision similar to our own clause, sec. 1, art. I.

The plaintiffs rely strongly on *Ritholz v. City of Detroit,* 308 Mich. 258, 13 N. W. (2d) 283, in which an ordinance like that involved in *City of Springfield v. Hurst, supra,* was held unconstitutional by a divided court, three justices out of eight participating dissenting. It is to be noted that this case was considered in *City of Springfield v. Hurst, supra,* and the view of the dissenting judges was adopted by a four-to-three decision.

But while there is disagreement in decisions of courts of last resort on the proposition that an ordinary trader cannot be prevented from advertising the price at which he will sell eyeglasses, there is unanimity on the proposition that any advertising that tends to deceive or mislead is a fraud on the

public, and in our view that rule applies to the instant plaintiffs under the instant statute for the same reason that it applied in *Semler v. Oregon State Board of Dental Examiners, supra,* and enforcement of the instant statute cannot be enjoined by the plaintiffs for the same reason that enforcement of the dental statute could not be enjoined in our dentist case, *supra.*

It is quite true that some of the advertising done by the plaintiffs is not within the ban of sec. 153.10, Stats. But clearly some of it is, and clearly the plaintiffs cannot enjoin all prosecution under the statute when part of its advertising is banned. Nor can they come into court for advice as to what advertisements it may make through seeking an injunction against prosecution for alleged legal advertising. If the plaintiffs are prosecuted under the statutes for advertising that they consider not fraudulent and the prohibition of it by statute therefore unconstitutional, they can assert their claim in defense. This constitutes an adequate legal remedy and thus bars an action in equity. *Ritholz v. Ammon,* 240 Wis. 578, 591, 592, 4 N. W. (2d) 173.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment dismissing the complaint.