## KEIFER *v.* STATE OF INDIANA.

[No. 25,658.   Filed February 23, 1933.]

*Harry K. Cuthbertson,* for appellant.

*James M. Ogden,* Attorney-General, and *E. Burke Walker,* Deputy Attorney-General, for the State.

TREANOR, C. J.—Appellant was indicted by the Howard County grand jury for murder in the first degree, and, upon change of venue to the Miami Circuit Court, the cause was submitted to a jury on November 21, 1927, and appellant was convicted of murder in the second degree. His first and sixth assignments of error question the Miami Circuit Court's jurisdiction of the cause on the ground that the original indictment was not transmitted by the clerk of the Howard Circuit Court with the transcript of the proceedings in that court to the Miami Circuit Court, and the 2nd, 3rd, and 4th

assignments of error present for review the action of the Miami Circuit Court after trial, and after appellant had filed his motion in arrest of judgment challenging the jurisdiction of the Miami Circuit Court on the ground that no indictment against him had been filed in that court in entering an order nunc pro tunc upon appellee's motion showing that the original indictment was filed in the Miami Circuit Court as of November 21, 1927, and changing the file mark on said indictment from December 5, 1927, to November 21, 1927. It appears from the record that a transcript of the proceedings of the Howard Circuit Court showing the action of that court in changing the venue of the cause upon appellant's motion to the Miami Circuit Court, together with appellant's original motion for change of venue from Howard County, was filed in the office of the clerk of the Miami Circuit Court on May 19, 1927, but it does not appear that the original indictment returned by the Howard County grand jury was deposited at that time with the clerk of the Miami Circuit Court. It further appears that on November 21, 1927, the defendant appeared in open court and waived arraignment and entered a plea of not guilty and the cause was submitted to a jury for trial. Appellant contends that the foregoing does not sufficiently comply with our statute[1] to give the Miami Circuit Court jurisdiction. On November 25, 1927, the jury

---

[1] §2239, Burns Ann. Ind. St. 1926, Acts 1905, p. 584, §207:
"When affidavits for a change of venue are founded upon excitement or prejudice in the county against the defendant, the court, in all cases not punishable by death, may, in its discretion, and in all cases punishable by death, shall grant a change of venue to the most convenient county. The clerk must thereupon immediately make a transcript of the proceedings and orders of the court, and, having sealed up the same with the original papers, shall deliver them to the sheriff, who must, without delay, deposit them in the clerk's office of the proper county, and make his return accordingly: Provided, however, That only one change of venue from the judge and only one change from the county shall be granted."

was instructed and on November 26, 1927, a verdict of guilty was returned. Appellee's instruction No. 1, given by the court, sets out in full the contents of the indictment and all the instructions tendered and given or refused were made a part of the record by appellant's bill of exceptions No. 1, filed December 13, 1927. Thereafter, on December 17, 1927, appellant filed his motion for a new trial and motion in arrest of judgment in which motions he first attacked the jurisdiction of the Miami Circuit Court on the ground that no indictment had been delivered to or filed with the clerk of that court.

There is no doubt that the original indictment in some manner got to the Miami Circuit Court and was with the transcript and other papers during the trial; also it is unquestioned that it was marked filed as of December 5th during the trial. We need not decide whether the trial court erred in ordering the file mark changed from December 5th to November 21st, as we are reversing the cause on other grounds and no question on this point can arise on a new trial since it clearly appears that the indictment is now filed with the trial documents.

Under appellant's 5th assignment of error, that the court erred in overruling his motion for a new trial, he presents 16 propositions. Of these we need only consider the 2nd, 4th, 8th, and 9th.

Appellant objects to the giving of instruction No. 4[2]

[2] "You will observe, Gentlemen of the Jury, that the difference between murder in the first degree and murder in the second degree, as defined by the sections of the statutes just read to you in this instruction is that murder in the first degree provides: 'Whoever, purposely and with premeditated malice, kills any human being, is guilty of murder in the first degree, and on conviction shall suffer death or be imprisoned in the state prison during life.' There must, to constitute the crime of murder in the first degree, be proven to your satisfaction that the killing, if you find there was a killing, was done purposely and with

which was tendered by the state. We think there is merit in appellant's position. While it is true that the words "premeditated malice" contained in the statutory definition of first degree murder[3] are eliminated from the definition of second degree murder,[4] yet that fact does not correctly describe the distinction between first and second degree murder. The instruction calls attention to the omission of the words "premeditated malice" from second degree murder and states that "malice aforethought means the intention to kill," and the effect of these statements might easily have been to mislead the jury into believing that "malice aforethought," or an "intention to kill," is not an element of second degree murder and that a much greater distinction exists between first and second degree murder, and a much less distinction between second degree murder and manslaughter than in fact exists.

"The *principle* involved, by which murder in the first degree is distinguished from murder in the second degree, is this: In the former, premeditated malice requires that there should be time and opportunity for deliberate thought; and that, after the mind conceives the thought of taking the life, the conception is meditated upon, and a deliberate

premeditated malice; murder in the second degree eliminates the words 'premeditated malice'. To constitute malice aforethought, it is only necessary that there be formed a design to kill; and such design may be conceived at the moment the fatal stroke is given as well as a long time before. Malice aforethought means the intention to kill; and when such means are used as are likely to produce death, the legal presumption is that death was intended."

[3] §2412, Burns Ann. Ind. St. 1926, Acts 1905, p. 584, §347: "Whoever, purposely and with premeditated malice, or in the perpetration of, or attempt to perpetrate, a rape, arson, robbery or burglary, or by administering poison, or causing the same to be administered, kills any human being, is guilty of murder in the first degree, and, on conviction, shall suffer death or be imprisoned in the state prison during life."

[4] §2415, Burns, etc., 1926, Acts 1905, p. 584, §350: "Whoever, purposely and maliciously, but without premeditation, kills any human being, is guilty of murder in the second degree, and, on conviction, shall be imprisoned in the state prison during life."

determination formed to do the act; that being done, then no difference how soon afterward the fatal resolve is carried into execution, it is murder in the first degree.

"While, in murder in the second degree, the purpose or intention to kill is followed immediately by the act, it is not premeditated; the time and circumstances are not such as to allow of deliberate thought; yet to make it murder even in the second degree, there must be a formed design and purpose to kill." *Fahnestock* v. *State* (1864), 23 Ind. 231, 261, 263.

The fourth cause for new trial presented by appellant is the giving of instruction No. 13.[5] In *Doty* v. *State* (1845), 7 Blackf. 427, the jury were told that "if the defendant has omitted to avail himself of evidence within his reach, by which he might have repelled that which was offered to his prejudice, his omission to do so supplies a strong presumption that the charge is well founded." The Supreme Court, in reversing the judgment, said:

". . . There is an error in the charge to the jury which must have reversed the judgment. It is undoubtedly true, that when circumstances are proved which induce a strong suspicion of the prisoner's guilt, but which, if untrue, it is manifest he can disprove, or, if reconcilable with his innocence, he can explain, and he fails to disprove or explain them, the jury are authorized to draw from such failure a forcible inference against him. 2 Stark. Ev., 937. But this inference is merely a presumption of fact, and does not constitute a presumption of law to be given by the Court to the jury as a

[5] "I further instruct you, Gentlemen of the Jury, that it is the law where either party in an action of this character has it peculiarly within their power to produce evidence or a witness or witnesses, whose testimony would or could explain any condition relative to the cause, the fact that such party does not, nor at least makes no effort to procure the testimony of the witness or witnesses, raises a presumption of law that the evidence or testimony of such witness or witnesses if produced would be unfavorable or prejudicial to the party or the parties failing to produce such testimony."

fixed and binding rule of jurisprudence. The failure is a circumstance which like any other circumstantial evidence, the jury are to weigh, and of the weight and tendency of which they are the sole judges. Something beyond this doctrine is contained in the charge under consideration. The jury were instructed, that if the prisoner had within his reach evidence by which he could have repelled the evidence which had been given against him, and he failed to produce it, the failure raised a strong presumption of his guilt. If, as the hypothesis contained in the charge implies, the prisoner actually had it in his power to repel and explain away the force of the adverse evidence, it is difficult to perceive how his failure to do so could raise a presumption of his guilt. The hypothesis itself presupposes his innocence whether he adduced the rebutting evidence or not; for if such evidence be admitted to be in his power, the presumption is that he was innocent."

In *Chaffee & Co.* v. *United States* (1873), 85 U. S. (18 Wall.) 516, 545, 21 L. Ed. 908, the United States Supreme Court had under consideration an instruction which in effect told the jury that where a party has proof in his power which, if produced, would render material facts certain, the law presumes against him if he omits to produce it and authorizes a jury to resolve all doubts adversely to his defense; that although the case must be made out against the defendants beyond all reasonable doubt, yet the course of the defendants may have supplied in the presumptions of law all which this stringent rule demanded. Field, J., speaking for that court, said:

"The purport of all this was to tell the jury that, although the defendants must be proved guilty beyond a reasonable doubt, yet if the government had made out a prima facie case against them, not one free from all doubt, but one which disclosed circumstances requiring explanation, and the defendants did not explain, the perplexing question of their guilt need not disturb the minds of the jurors;

their silence supplied in the presumptions of the law that full proof which should dispel all reasonable doubt. In other words, the court instructed the jury, in substance, that the government need only prove that the defendants were presumptively guilty, and the duty thereupon devolved upon them to establish their innocence, and if they did not they were guilty beyond a reasonable doubt. We do not think it at all necessary to go into any argument to show the error of this instruction. The error is palpable on its own statement. All the authorities condemn it. (Citing *Doty* v. *State, supra.*) . . . The instruction sets at naught established principles, and justifies the criticism of counsel that it substantially withdrew from the defendants their constitutional right of trial by jury, and converted what at law was intended for their protection—the right to refuse to testify—into the machinery for their sure destruction."

In *Lee* v. *State* (1900), 156 Ind. 541, 60 Ind. 299, 302, cited by appellee, the only question presented was that the verdict of the jury was contrary to both the law and the evidence, and this court did not consider the correctness of any instruction involving the questions presented by instruction No. 13. The evidence on the part of the state, in that case, established that at about the time of the commission of the alleged offense appellant was in the company of one Taylor. The defense did not call or produce Taylor as a witness and offered no testimony whatever. This court, in reaching the conclusion that there was "no such absence of evidence upon any essential fact in the case as to present" to it a question of law, considered the fact of the failure of appellant to produce Taylor or give a reason for not producing him as a witness as raising a presumption that the evidence, if produced, would be unfavorable to him. The effect of the holding in the Lee case, *supra*, was to say that the verdict could be said to be sustained by the evidence because in testing the sufficiency of the evidence this court must consider the

facts properly introduced and the facts which the jury might have presumed from the defendant's failure to procure evidence peculiarly within his power to produce. In the instant case, the jury were told that the non-production of such evidence "raises a presumption of law" that it would be prejudicial to the party failing to produce it. This was clearly error because, at most, the failure of a defendant to produce evidence lying wholly within his power to produce, or explain its non-production, raises only a presumption of fact.[6]

The giving of instruction No. 13 was erroneous for the further reason that when applied to the evidence in the case which was substantially the same as that set out in the opinion of this court on a former appeal, reported in 199 Ind. 10, 154 N. E. 870, except that appellant did not testify as a witness, it does not appear that there was any "evidence, witness or witnesses" which the defendant might have produced, or attempted to produce, and therefore the jury could have reasonably understood the instruction to refer to the defendant's failure to testify in his own behalf and that "a presumption of law" was raised from his failure to testify.

That the jury could have understood that the instruction referred to appellant's failure to testify seems more likely when considered in connection with the statement of the prosecuting attorney during argument, which statement was as follows:

"To my knowledge no one has testified as fixing the time in which the act occurred, not even the defendant."

[6] "Presumptions of fact are inferences as to the existence of some fact drawn from the existence of some other fact; inferences which common sense draws from circumstances usually occurring in such cases. 3 B. & Ad. 890.

"Presumptions of law are rules which, in certain cases, either forbid or dispense with any ulterior inquiry. 1 Greenl. Ev. §14." Bouv. Law Dictionary, p. 2678.

In overruling appellant's objection to the statement and motion to withdraw submission, the trial court said:

"Overrule the objection. It isn't in the record. I didn't hear it—whatever was said."

Thereupon the prosecuting attorney added the following:

"I might correct the statement and say it is not contended by the defense in this case, instead of using the word 'defendant,' I will use the word 'defense'—that any person, male or female, or any set of persons, had anything to do with this case other than the defendant in this case and the decedent, Catherine Russell."

The record shows that nothing was done by the trial court to admonish the prosecuting attorney that such language was improper or to instruct the jury that it was not proper and should not be considered. *Davis v. State* (1926), 197 Ind. 448, 151 N. E. 329. The rule by which the harmfulness of misconduct of a prosecuting attorney is determined should be analogous to the rule adopted in testing the harmfulness of admitting improper evidence:

" 'Where improper evidence has been interposed it will be presumed to be harmful unless the contrary is made to appear'; . . . but . . . where improper evidence has been admitted over objection and the trial court subsequently withdraws such evidence from the consideration of the jury, it will be presumed that the error has been cured unless the contrary is made to appear." *Ross v. State*, ante 281, 182 N. E. 865.

Where a prosecuting attorney, in his argument, comments, in violation of the statute (§2267, subd. 4, Burns Ann. Ind. St. 1926, Acts 1905, p. 584, §235) upon the failure of the accused to testify, harmful error will be presumed unless the contrary is made to appear, but where it appears that reasonable and prompt measures

are taken by the trial court to prevent any injurious effect from such improper remarks, it will be presumed that the error has been cured, in the absence of a contrary showing. (See Blume v. State [1900], 154 Ind. 343, 356, 56 N. E. 771, 776.[7]) In the instant case the court took no steps to admonish the prosecuting attorney and inform the jury of the impropriety of the remarks and in connection therewith to tell the jury that the defendant's failure to testify should not be "in any manner considered by the jury" (§2267, supra), and therefore the prosecuting attorney's statements will be presumed to have been harmful and the overruling of a motion for a new trial on that ground will constitute reversible error. The action of the prosecuting attorney in changing his statement to use the word "defense" instead of "defendant," after objection by appellant, could not take the place of reasonable and prompt action by the trial court in with-

---

[7] "But we are inclined to think that misconduct of the character alleged on the part of the attorney for the state does not in every instance constitute such incurable error as, ipso facto, entitles a defendant to a new trial, even where the question is properly reserved and presented. It must be presumed that the jury are men of sense, and that they will obey the admonition of the court when told that they must not permit the reference to the failure of the defendant to testify to influence their minds. In most other instances, when the objection to incompetent testimony, the use of improper language, or other misconduct on the part of counsel is sustained, and the jury are promptly and sufficiently advised upon the question so presented, it is held that the party injured has obtained all the relief which he can justly claim. While a violation of the statute forbidding comment upon, or reference to, the failure of a defendant in a criminal cause to testify is inexcusable on the part of the offending attorney, and deserving of the severest censure of the court, we do not think that it should in all cases have the extreme effect of arresting the cause and compelling the court to grant a new trial, where reasonable and prompt measures are taken by the court to prevent any injurious effect from such unprofessional ... conduct. ... Gross violations of the rule or a refusal or failure on the part of offending counsel to heed the admonition of the court when told to refrain from such comment or reference, would doubtless justify the court in sustaining a motion to set aside the submission and order a new trial." Blume v. State, supra.

drawing the statement and directing the jury not to consider it.

The cumulative effect of the trial court's failure to take such steps as would remove the harmful effect of the prosecuting attorney's statement, together with the giving of instruction No. 13, was to defeat the statutory provision forbidding comment upon, reference to, or consideration of the fact that the accused had not testified[8] and tended to deprive appellant of the constitutional guaranty that "no person, in any criminal prosecution, shall be compelled to testify against himself." (Art. I, §14, Ind. Const.)

Since the questions presented by appellant's motion for a new trial on the grounds of newly-discovered evidence will not arise upon a retrial, it is not necessary to consider such questions here.

Appellant's 8th proposition questions the action of the trial court in permitting a defense witness to answer on cross-examination a hypothetical question calling for an opinion of the witness as to the firing of a gun under the facts assumed in the question. It appears that upon direct examination the witness, a physician and surgeon, after qualifying as an expert upon the subject of the reaction of the muscles at the time of the death of a person as a result of gun shot wounds, was asked a hypothetical question concerning the release of grasp upon the weapon by one who has committed suicide in an effort to show that a person

---

[8] §2267, Burns Ann. Ind. St. 1926, Acts 1905, p. 584, §235: "The following persons are competent witnesses:
Fourth: The defendant, to testify in his own behalf. But if the defendant does not testify, his failure to do so shall not be commented upon or referred to in the argument of the cause, nor commented upon, referred to, or in any manner considered by the jury trying the same; and it shall be the duty of the court, in such case, in its charge, to instruct the jury as to their duty under the provisions of this section."

might kill himself, and in falling release his grasp upon the weapon. The effect of the question objected to was to call for the opinion of the witness as to whether a certain assumed state of facts concerning the grasp of a person who has been shot and falls would be proof to the witness that such person fired the gun. In the first instance the preliminary facts were assumed and from them the witness was asked what fact, in his opinion as an expert, the assumed facts established; in the latter case, upon cross-examination, a certain fact was assumed as established and the witness was asked what preliminary facts, in his opinion as an expert, must have existed to establish the fact assumed. In either case, the answer consisted of the application to the facts assumed of certain scientific knowledge which the witness possessed by reason of which knowledge his opinion, or the inference he drew from the facts assumed, was admissible. The question and answer objected to were clearly admissible under the rulings of this court concerning hypothetical questions asked on cross-examination:

"Where a witness examined as an expert, expresses an opinion based on facts assumed by the party introducing him to have been proved, or upon a hypothetical case put by such party, then the other party may cross-examine the witness by taking his opinion based upon any other set of facts assumed by him to have been proved, or upon a hypothetical case." *Grubb* v. *State* (1889), 117 Ind. 277, 284, 20 N. E. 257, 260, 275. See, also, *McHargue* v. *State* (1923), 193 Ind. 204, 215, 139 N. E. 316.

We need not consider any of the alleged errors involving the sufficiency of the evidence. But in view of the obvious injury to the cause of the defendant by reason of the giving of instruction No. 13, taken in connection with the improper remarks of the prosecuting at-

torney while addressing the jury, the cause must be reversed.

We hold that the trial court erred in overruling appellant's motion for a new trial. Judgment is reversed and the trial court is directed to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.

It is further ordered that the clerk of this court make and certify to the warden of the Indiana State Prison the usual order for the return of appellant to the custody of the sheriff of Miami County.

Roll, J., not participating.