FRINGER and another, Respondents, v. VENEMA, Appellant.*

*January 6—February 2, 1965.*

* Motion for rehearing denied, without costs, on March 30, 1965.

For the appellant there was a brief by *Kenney, Korf & Pfeil* of East Troy, and oral argument by *Francis J. Korf*.

For the respondents there was a brief by *Morrissy, Morrissy, Sweet & Stowe* of Elkhorn, and oral argument by *Ralph R. Stowe*.

BEILFUSS, J.    Plaintiffs base their cause of action upon sec. 172.01, Stats.:

"*Animals not to run at large.* No stallion over one year old, nor bull over six months old, nor boar, nor ram, nor billy goat over four months old shall run at large; and if the owner or keeper shall, for any reason, suffer any such animal so to do he shall forfeit five dollars to the person taking it up and be liable in addition for all damages done by such animal

while so at large, although he escapes without the fault of such owner or keeper; and the construction of any fence enumerated in section 90.02 shall not relieve such owner or keeper from liability for any damage committed by an animal of the enumerated class upon the inclosed premises of an adjoining owner."

The parties agree that an owner of an animal described in this statute is subject to absolute liability if he allows such animal to run at large even though it escapes the enclosure without fault of the owner or keeper.[1]

The defendant contends that because the statute imposes strict liability the plaintiffs must prove every element of the statute and that the trial court was in error in taking judicial notice that the bull was at least six months old. Admittedly the plaintiffs did not prove the age of the bull nor does it appear in the record.

The first issue for determination is, can the court take judicial notice that a bull old enough to breed 15 heifers in a period from May to September was at least six months old at the time of the breeding.

The trial court did not advise the parties that it would take judicial notice of this fact nor was the court requested to do so by the plaintiffs.

The defendant did not move to review the findings in the trial court but did file three affidavits and a letter with the record on appeal. Two of the affidavits were made by local veterinarians who stated they did not believe it was impossible for a bull calf of less than six months of age to fertilize a heifer. One affidavit was by a farmer with many years' experience who stated he knew of more than one occasion where a bull calf of less than six months bred a heifer. The letter quoted Dr. Stephen S. Roberts, a specialist in veterinary obstetrics, to the effect that it is "highly improbable" that a bull of six months was sufficiently mature to fertilize a

---

[1] *Reuter v. Swarthout* (1924), 182 Wis. 453, 196 N. W. 847.

heifer but "we would hesitate to say that it is totally impossible."

The defendant urges that the trial court was in error by taking judicial notice that the bull was at least six months old to be able to breed the plaintiffs' heifers because the age at which bulls can fertilize heifers is not a matter of common knowledge and that it is disputable and not impossible that a bull of less than six months has such capacity.

In *Ritholz v. Johnson* (1944), 244 Wis. 494, 501, 502, 12 N. W. (2d) 738, in considering judicial notice, this court said:

". . . Matters of common knowledge are not limited to those matters of which practically everyone has knowledge. In a complex society such as ours there are in many fields of activity matters which are within the knowledge of all those who are associated with the activity of which the general public knows little or nothing. For instance, in the railroad business hundreds of thousands of people are employed. No doubt many things are matters of common knowledge and are assumed and acted upon by those engaged in the business daily if not hourly. In a case involving some phase of the railroad business a court might well inform itself as to those matters. It may do this by resort to encyclopedias, authoritative works upon the subject, reports of committees, scientific bodies, and any source of information that is generally considered accurate and reliable, or it may as in *State ex rel. Carnation M. P. Co. v. Emery, supra,* resort to a judicial investigation of the facts. As ordinarily considered, taking judicial notice does not include these methods of obtaining knowledge of matters of which the court may take judicial notice but of which it has no knowledge."

Professor Wigmore in 9 Wigmore, Evidence (3d ed.), pp. 547, 548, sec. 2571, states:

"SCOPE OF PRINCIPLE. The scope of facts that may be noticed includes:

"(1) Matters which are actually so notorious to all that the production of evidence would be unnecessary;

"(2) Matters which the judicial function supposes the judge to be acquainted with, in theory at least;

"(3) Sundry matters not included under either of these heads; they are subject for the most part to the consideration that though they are neither actually notorious nor bound to be judicially known, yet they would be capable of such instant and unquestionable demonstration, if desired, that no party would think of imposing a falsity on the tribunal in the face of an intelligent adversary."

Appellate Courts Use of Facts Outside of the Record by Resort to Judicial Notice and Independent Investigation, 1960 Wisconsin Law Review, 39, written by our present chief justice, represents an enlightened view of when judicial notice may be taken. He there said:

"Even under the theory that courts only take judicial notice of matters of common or general knowledge, it is recognized that judges sometimes have to look beyond their own personal knowledge to acquaint themselves with facts of which judicial notice may properly be taken. . . .

"However, the tendency is to extend judicial notice beyond the field of facts of common knowledge to the sphere of those facts 'capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy.'
. . .

"Courts will take judicial notice of 'scientific facts which have been well established by authoritative scientists and are generally accepted as irrefutable by living scientists.'"

McCormick [2] suggests that the trend is shifting from the test of "common knowledge" to "verifiable certainty."

We subscribe to the rule that the trial court may in its discretion take judicial notice of facts of "verifiable certainty" either upon its own motion or upon request of a party to the action. If the fact to be noticed is not one of general common knowledge but can be verified to a cer-

[2] McCormick, Judicial Notice, 5 Vanderbilt Law Review (1952), 296, 323.

tainty by reference to competent authoritative sources, and is to be used as an adjudicative as distinguished from a legislative fact, the trial judge or the party requesting judicial notice should notify the parties or the adversary, as the case may be, so as to afford them an opportunity of consulting the same sources or of producing others. This does not mean that there will be a trial of textbooks, but rather it serves only to apprise the court whether the subject is verifiably certain or whether the issue must be proved and determined as a fact question.[3]

We deem the fact question here namely whether a bull must be over six months of age to be capable of fertilizing 15 heifers during the period of May to September to be subject to judicial notice if such fact is verifiably certain. However, before judicial notice of such fact can be taken, adequate notice must be given to the parties to enable them to be heard on the question of verifiable certainty.

An issue not raised by the parties but alluded to by the court at oral argument deals with the question of the application of a rebuttable presumption.

Because sec. 172.01, Stats., imposes strict liability,[4] the statute must be strictly construed. Absolute liability cannot be imposed unless the statutory requirement of a "bull over six months old" is established.

Chs. 173 and 174, Stats., recognize that domestic animals may do damage to the property of others and set forth remedies available for the persons sustaining damage. These chapters also provide for defenses in some instances. This is not so in the case of domestic animals described in ch. 172—in those instances strict liability is imposed. All of the domestic animals described in ch. 172 are commonly used for breeding purposes. We will judicially notice that the legislature acknowledged that the male domestic animals described in

---

[3] 9 Wigmore, Evidence (3d ed.), pp. 536, 537, secs. 2568, 2568a.
[4] *Reuter v. Swarthout, supra.*

the chapter develop propensities so as to make them dangerous to property and persons when they reach the age of breeding serviceability. The legislature recognized this age to be six months in the case of a bull.

We think it appropriate to apply a rebuttable presumption that the bull was six months old where the plaintiff or claimant has established that the defendant owned the bull, allowed him to run at large, and that the bull escaped his enclosure and did damage to the property or person of another.

The application of a rebuttable presumption does not impose an unfair burden upon the owner or keeper of the bull. He is in a much superior position to know the actual age of the animal. The rebuttable presumption only requires him to come forward with some evidence as to its age and if he does, the presumption drops out and the claimant has the burden to prove the bull was six months old or older before he can recover his damage.

In 9 Wigmore, Evidence (3d ed.), p. 289, sec. 2491, it is said:

". . . it must be kept in mind that the peculiar effect of a presumption 'of law' . . . is merely to invoke a rule of law compelling the jury to reach the conclusion *in the absence of evidence to the contrary* from the opponent. If the opponent *does* offer evidence to the contrary (sufficient to satisfy the judge's requirement of some evidence), the presumption disappears as a rule of law, and the case is in the jury's hands free from any rule."

This rule was followed in *McCarty v. Weber* (1953), 265 Wis. 70, 60 N. W. (2d) 716; *State ex rel. Northwestern Development Corp. v. Gehrz* (1939), 230 Wis. 412, 283 N. W. 827; *Reichert v. Rex Accessories Co.* (1938), 228 Wis. 425, 279 N. W. 645.

The plaintiffs-respondents contend that defendant-appellant should not be permitted to seek a review of alleged

errors of the trial court unless he preserves them by motions for a new trial made to the trial court.

The general rule is that failure to point out with particularity the grounds of error in a motion after verdict constitutes a waiver of such errors. The motion for new trial affords the trial court the opportunity to correct error by granting a new trial.

In *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380, we stated:

". . . We deem the correct rule to be that no error of the court should be reviewable *as a matter of right* on appeal without first moving in the trial court for a new trial bottomed on such error, if the error is of a category that a trial court could correct by granting a new trial. Sec. 251.09, Stats., authorizes this court *in its discretion* to grant a new trial whenever we deem that there has been a miscarriage of justice. The exercise of such power is not dependent on whether the aggrieved party protected his rights by objection or motion in the trial court. While this power is sparingly exercised by this court, we do not hesitate to employ it in hardship cases to prevent a miscarriage of justice."

The *Wells Case* and others cited by counsel all involve jury trials and motions for new trial after the return of the verdict, pursuant to sec. 270.49, Stats. In this instance the trial was not to the jury but to the court, and error alleged goes to findings of fact by the court rather than to the verdict of the jury. A companion statute, sec. 269.46 (3),[5] provides that all judgments and orders of the trial court can be reviewed by that court within sixty days of notice of entry thereof. We deem this statute sufficiently broad to allow a motion to review the findings of fact entered by the trial court and commend its use to afford the trial court an op-

---

[5] "All judgments and court orders may be reviewed by the court at any time within 60 days from service of notice of entry thereof, but not later than 60 days after the end of the term of entry thereof."

portunity to correct its findings of fact, conclusions of law, and judgment, or award a new trial in appropriate instances. Counsel has not cited a Wisconsin case, nor have we found one, requiring that a motion to review be brought in the trial court as a prerequisite to a consideration of the alleged error on appeal in a nonjury case.[5a] While we approve and commend the practice, we do not at this time declare it to be mandatory but reserve this question for subsequent opinion or court rule.

Ordinarily this court must decline to consider affidavits which are not a part of the record. Judicial notice, however, by its very nature contemplates that factors beyond the record are under consideration. The trial court in the instant case took judicial notice of a fact without disclosing the sources thereof; under such exceptional circumstances we deem it appropriate for counsel to have supplemented the record on appeal with original affidavits.

Because we have elaborated upon the procedural aspects of judicial notice and have decreed that a rebuttable presumption can be applied to the facts of this case, we deem that in the interests of justice and sense of fair play we should exercise our discretion under sec. 251.09, Stats., to reverse the judgment of the trial court and order a new trial.

The defendant also contends that the proof offered by plaintiffs fails to establish the damages awarded by the trial court. Schmitt testified his heifers were each worth $250 before they were bred and $90 after. Fringer testified his heifers were worth 18 to 20 cents per pound before they were bred and worth half the original value after they were bred.

[5a] See *Peterson v. Wingertsman* (1961), 14 Wis. (2d) 455, 460, 111 N. W. (2d) 436, and *Gilson v. Drees Brothers* (1963), 19 Wis. (2d) 252, 259, 120 N. W. (2d) 63, where the rule of the *Wells Case* was applied to directed verdicts.

He further testified that they were sold in February and March, several months after they were taken from the pasture. Obviously, Fringer could not immediately determine that the heifers were impregnated. Without further comment upon the evidence we determine that the defendant has not established that the trial court's finding on damages is against the great weight and clear preponderance of the evidence. The finding on damages is sustained and need not be relitigated.

The new trial will be restricted to the liability issue.

Be it remembered, "A bull's worth depends on his performance." [6]

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with the opinion.

The following memorandum was filed March 30, 1965.

PER CURIAM (*on motion for rehearing*). In his brief in support of his motion for rehearing the defendant disputes the damages that were found for the plaintiff, Fringer. On reconsideration we are of the view that the trial court's finding of $875 damages is against the great weight and clear preponderance of the evidence, the pertinent elements of which are set forth in our original opinion.

We conclude, therefore, that the new trial ordered in our original mandate should include a new trial on the issue of the damages of plaintiff, Fringer. Our determination that the trial court's finding of damages of the plaintiff, Schmitt, "is sustained" is reaffirmed. In all other respects we reaffirm our original opinion. The motion for rehearing is denied without costs.

---

[6] Juergenson, Approved Practices in Beef Cattle Production (1958), p. 64.

376b

The original mandate on this appeal is withdrawn and the corrected mandate shall read as follows:

*By the Court.*—Judgment reversed, and cause remanded for a new trial consistent with the opinion, as modified by the memorandum on rehearing.