JOHNNIE MARIE SUMPTER *v.* STATE OF INDIANA.

[No. 575S130. Filed January 28, 1976.]

*John D. Clouse,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Assistant Attorney General, for appellee.

HUNTER, J.—Appellant was convicted after jury trial of living in a house of ill fame.[1] On appeal, this conviction was reversed because the record contained ". . . no direct evidence of appellant's sex. . . ." *Sumpter* v. *State,* (1973) Ind. App., 296 N.E.2d 131, 133. We accepted the state's petition to transfer the matter to this Court and modified the Indiana common law rule on proof of sex to provide that trial courts may take judicial notice of a defendant's sex. *Sumpter* v. *State,* (1974) 261 Ind. 471, 306 N.E.2d 95. The effect of such notice is the creation of a rebuttable presumption sufficient to establish a prima facie case where the defendant "fails to produce any competent evidence to the contrary." *Id.,* at 99. Upon review of the other questions presented by appellant, we affirmed the conviction but remanded the cause to the trial court "for determination of the defendant's sex pursuant to the procedures set out herein." *Id.,* at 104.

On remand appellant objected to being retried upon the issue of sex, contending that the procedure announced in our opinion ran afoul of various state and federal constitutional provisions. The motion was overruled and a hearing was held before the trial court. The hearing commenced with the trial court taking judicial notice that appellant was a female person. Appellant rejoined by offering into evidence

---

1. Ind. Code § 35-30-1-1, Burns § 10-4220 (1956).

selected portions of a medical treatise describing various genetic and pathological conditions which make it difficult (if not impossible) to determine an affected individual's sex by external physical observation. Finding this evidence insufficient to rebut the presumption, the trial court entered judgment. Thereafter, appellant filed a motion to modify the judgment, which was overruled. Appellant filed a motion to correct errors assigning as error the overruling of all prior motions. From the overruling of the motion to correct errors appellant appealed to the Court of Appeals. Since the appeal arises from our remand, the Court of Appeals transferred the case directly to us.

## I.

We first address appellant's claim that the effect of the remand was to place appellant twice in jeopardy in violation of federal and state constitutional guarantees. There is no doubt that the proceedings on remand were "devoted to the resolution of factual issues going to the elements of the offense charged," and therefore at odds with the constitutional policy against multiple trials. See *e.g., United States* v. *Jenkins,* (1975) 420 U.S. 358, 95 S.Ct. 1006, 43 L.E.2d 250.

The contour of the federal double jeopardy provision is not so symmetrical as to exclude all conflicts, however. While exceptions to the ban on repeated attempts to convict "have been only grudgingly allowed," see *United States* v. *Wilson,* (1975) 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232, some do obtain. When a defendant who has been adjudged guilty wins reversal of an unsatisfied conviction, the Double Jeopardy Clause does not bar his retrial.[2]

---

2. The seminal decision is United States v. Ball. In Ball, reversal was necessitated by a defective indictment, not insufficient evidence. In Bryan v. United States, the United States Supreme Court affirmed the decision of the Fifth Circuit Court of Appeals remanding the case to the district court for new trial because there was insufficient evidence to sustain the conviction. As authority for the proposition that the remand was constitutionally inoffensive where the determination of insufficient evidence was first made by an appellate tribunal, the Bryan court relied upon Ball-type cases where the errors were "errors of

*United States* v. *Ball,* (1896) 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300; *Bryan* v. *United States,* (1950) 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335; *United States* v. *Tateo,* (1964) 377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448; *United States* v. *Ewell,* (1966) 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627; *North Carolina* v. *Pearce,* (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; *Chaffin* v. *Stynchcombe,* (1973) 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714.

The rationalization of this exception was traveled under the labels of "consent," "waiver," and "continuing jeopardy." These verbalizations have recently been criticized by the United States Supreme Court. See *e.g., Breed* v. *Jones,* (1975) 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346, 358; *United States* v. *Wilson, supra,* n. 11; *North Carolina* v. *Pearce, supra,* n. 18. The necessity for such an exception continues, however, and its explanation currently lies "in an analysis of the respective interests involved," see *Breed* v. *Jones, supra.* Those interests are brought sharply into focus by comparing Mr. Justice Brennan's statement in his concurring opinion in *Ashe* v. *Swenson,* (1970) 397 U.S. 436, 459, 90 S.Ct. 1189, 25 L.Ed.2d 469, 484, "One must experience a sense of uneasiness with

law." While the illogic of a provision which bars reprosecution when a jury or trial court finds insufficient evidence and orders acquittal, but does not bar reprosecution where the same finding is made by an appellate tribunal has been pointed out, see Note, "Double Jeopardy: A New Trial After Appellate Reversal For Insufficient Evidence," 31 U. CHI. L. REV. 365 (1963), nevertheless, the Supreme Court has apparently rejected any distinction between insufficiency of the evidence and other errors of law, see United States v. Tateo. Some members of the Court would limit a Bryan type remand to the situation where the appellant has asked for a new trial, see e.g., Sapir v. United States, (1955) 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (Douglas, J., concurring); Forman v. United States, (1959) 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412; but see concurring opinion on Harlan, J., in *Forman,* ". . . [T]he right of an appellate court to order a new trial does not turn on the relief requested by the defendant, and the Sapir Case dos not suggest such a distinction," 361 U.S. 428, 80 S.Ct. 488, 4 L.Ed.2d 421. In this case, appellant sought a new trial. Even when an appellant seeks a new trial, the evidence may be "so clearly insufficient" that an acquittal should be ordered, see Yates v. United States, (1957) 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356. Such was not the case at bar, with Givan, J., and Prentice, J., voting to affirm on the basis of the record without remand.

any double jeopardy standard that would allow the state this second chance to plug up the holes in its case," with Mr. Justice Harlan's statement in *United States* v. *Jorn*, (1970) 400 U.S. 470, 483-84, 91 S.Ct. 547, 556, 27 L.Ed.2d 543, 556, "Certainly it is clear beyond question that the Double Jeopardy Clause does not guarantee a defendant that the Government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense."

Neither federal nor state double jeopardy provisions barred the remand of appellant's cause.

## II.

Before the hearing on remand, appellant objected to being tried, asserting that a hearing before the bench alone would violate appellant's constitutional right to trial by jury. The wording of the objection and the trial court's action in over-ruling the motion suggest that the parties and the court approached the question of appellant's right to a jury trial firmly convinced that our mandate denied such right. It did not. We believe the parties reached this erroneous conclusion from an inadequate understanding of the function of judicial notice in the case a bar. To the extent that our opinion failed to elucidate the relevant considerations for the parties' guidance in this matter, we confess error. Because the presumption was not rebutted, however, there was no need for jury trial on the issue of appellant's sex.

Judicial notice of adjudicative facts[3] was initially permitted only in situations where "the fact is so commonly known in the community as to make it unprofitable to require proof, and so certainly known as to make it indisputable among reasonable men." McCormick, McCORMICK ON EVIDENCE

---

3. "Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case." K. Davis, ADMINISTRATIVE LAW TEXT, § 7.03 (3rd ed. 1972).

§ 329 (2d ed. 1972). When so applied, judicial notice operates as a matter of law, whether the case be tried with or without a jury. There can be no issue of fact where the noticed matter is unquestionably true. See Comment, "The Presently Expanding Concept of Judicial Notice," 13 VILL. L. REV. 528, 542-43 (1968). Moreover, since the right to trial by jury extends only to debatable issues of fact, there can be no conflict with that right.

With an eye upon judicial efficiency, Professors Wigmore and Thayer urged that judicial notice ought to encompass facts which were *unlikely to be challenged,* as well as those which were indisputable [emphasis added]. See Davis, "A System of Judicial Notice Based on Fairness and Convenience," in PERSPECTIVES OF LAW 81 (1964). The lead case espousing this view of judicial notice is *Fringer* v. *Venema,* (1965) 26 Wis.2d 366, 132 N.W.2d 565, wherein the Supreme Court of Wisconsin held that judicial notice was appropriate not only where the fact was common knowledge, but also where the fact could be verified "to a certainty by reference to competent authoritative sources." 132 N.W.2d 569. In accordance with the holding in *Fringer* is Rule 201(b) of the FEDERAL RULES OF EVIDENCE which provides:

> "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

Applying this broader standard of judicial notice, the *Fringer* court judicially noticed that a bull old enough to breed fifteen heifers in a period from May to September was at least six months old at the time of breeding, the age required to impose strict liability upon the owners of trespassing cattle under the Wisconsin statute.

Under this broader doctrine of judicial notice, a fact which is true *ordinarily,* but not *universally,* may be noticed. If the

party against whom the fact is noticed is not permitted an opportunity to demonstrate that the fact is not true in the case at bar, a denial of due process results. The court in *Fringer* solved this dilemma by the application of a rebuttable presumption to the judicially noticed fact:

"We think it appropriate to apply a rebuttable presumption that the bull was six months old where the plaintiff or claimant has established that the defendant owned the bull, allowed him to run at large, and that the bull escaped his enclosure and did damage to the property or person of another.

"The application of a rebuttable presumption does not impose an unfair burden upon the owner or keeper of the bull. He is in a much superior position to know the actual age of the animal. The rebuttable presumption only requires him to come forward with some evidence as to its age and if he does, the presumption drops out and the claimant has the burden to prove the bull was six months old or older before he can recover his damage." 132 N.W.2d 570.

A similar procedure was adopted by this Court in our opinion on transfer. We stated:

". . . In order to conserve precious judicial time, a rebuttable presumption of the defendant's sex arises once the judge takes judicial notice of such fact. This presumption is sufficient to constitute a *prima facie* case in favor of the State *when the defendant fails to produce any competent evidence to the contrary.* However, once the defendant challenges the presumption by introducing competent evidence, the presumption passes forever from the case. The State, then by affirmative evidence, must establish the defendant's sex beyond a reasonable doubt." 306 N.E.2d 99 [emphasis added].

Given the effect of a rebuttable presumption, it is clear that a defendant becomes entitled to have the jury determine the fact which has been judicially noticed whenever the defendant presents *any* "competent or admissible evidence, direct or circumstantial" which "dispute[s] the presumption." See *Young* v. *State*, (1972) 258 Ind. 246, 280 N.E.2d 595. In

this case, our original opinion noted that judicial notice of sex would be appropriate because:

"The sex of a human being is generally its most obvious characteristic. We can look at another human being and, with a very high degree of certainty, ascertain his or her sex."

On remand, appellant introduced the circumstantial evidence described above, but such evidence was merely a broadside at the underlying basis upon which the trial court took judicial notice of appellant's sex. There was no showing that appellant was afflicted with any of the conditions described in the medical text. Hence, the evidence introduced by appellant failed to dispute the presumption. The trial court was correct in finding such evidence insufficient to rebut the presumption. There being no disputed question of fact as to the appellant's sex, there was no need for a jury trial.

### III.

Appellant urges that the new procedure for establishing sex in a criminal trial was in violation of the separation of power provisions of the Indiana Constitution. Alternatively, appellant argues that we failed to follow the procedure set forth in Ind. R. Tr. P. 80 for the promulgation of "additions, modifications and changes of rules of procedure."

We deem these arguments to be without merit. To the extent the legislature has been concerned with judicial notice, it has been concerned with judicial notice of laws, not facts. See *e.g.,* Ind. Code § 34-3-2-1 *et seq.* (Uniform Judicial Notice of Foreign Law Act). The only trial rule relating to judicial notice, Ind. R. Tr. P. 9.1 (E), provides that "Neither presumption of law nor matters of which judicial notice may be taken need be stated in a pleading."

The law concerning proof of facts is not a matter which the constitution placed solely within the province of the legislative branch. In modifying the common law rule on proof of sex,

we acknowledge that a new procedure was established, but reject appellant's thesis that any rule so announced by the Court must either be a duly adopted rule of trial procedure or a law passed by the legislature. Such an analysis sidesteps the great niche reserved for additions to the common law.

## IV.

Appellant further attacks the procedure as violating appellant's right to have the state prove its case beyond a reasonable doubt, the right to confront witnesses and the right to be free from ex post facto laws.

For the reasons stated in our opinion and *Young* v. *State* cited therein, a presumption does not alter the burden of proof and the quantum of proof required to sustain a conviction.

It has been noted that "facts disputable literally must not be made indisputable procedurally." Comment, "The Presently Expanding Concept of Judicial Notice," 13 VILL. L. REV. 528, 546 (1968). By giving appellant an opportunity to present evidence challenging the judicially noticed fact, we have made it possible for appellant to destroy the presumption, and thereby require that the fact be proven in the ordinary manner. When the presumption has been destroyed, this procedure carefully preserves the right of confrontation in the only situation where such right is meaningful.

Appellant's ex post facto argument is meritless. The constitutional provisions apply only to criminal laws enacted by legislative bodies. *Andrews* v. *Russell*, (1845) 7 Blackf. 474.

## V.

Appellant's final contention is that the trial court erred in failing to modify appellant's sentence on the basis that living in a house of ill fame is a lesser included offense of keeping such a house and that the penalties should correspond.

In order for an offense to be a lesser and included offense, it must be such that it is impossible to commit the greater

offense without first having committed the lesser offense. *Certain* v. *State*, (1973) 261 Ind. 101, 300 N.E.2d 345. Since the element of control inherent in *keeping* a house of ill fame could be exercised by some means other than *living* in a house of ill fame, we hold that *living* in a house of ill fame is not a lesser and included offense of *keeping* a house of ill fame. The trial court properly overruled appellant's motion.

For all the foregoing reasons, the judgment is affirmed.

Judgment affirmed.

Givan, C.J., and Arterburn, J., concur; Prentice, J., concurs in result with opinion; DeBruler, J., dissents with opinion.

### CONCURRING OPINION

PRENTICE, J.—I concur in the result herein only because I regard the remand for the purpose of determining Appellant's sex to be erroneous. The result reached by the majority amounts to a correction of that error and an adoption of my dissenting opinion at 306 N.E.2d 95 at 106 as the logical answer and the rule of this case.

### DISSENTING OPINION

DEBRULER, J.—The procedure for establishing womanhood as a statutory element of the offense of which appellant stands convicted served to deny appellant the right to trial by jury guaranteed by Art. 1, § 19, of the Indiana Constitution and is invalid as compelling a defendant to incriminate himself in violation of the privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, § 14, of the Indiana Constitution.

In this case, the judge, rather than the jury, determined that a statutory element of the offense was proved to have existed beyond a reasonable doubt. Why does this not deny the right to trial by jury? Appellant certainly had the right

to trial by jury. That right is granted in Indiana by the Bill of Rights in Art. 1, § 19, which provides:

"In all criminal cases whatever, the jury shall have the right to determine the law and the facts."

In *Dedrick* v. *State*, (1936) 210 Ind. 259, 2 N.E.2d 409, this Court held that a trial court denies the right to trial by jury if it mandates the jury to make an affirmative factual inference. In *Walter* v. *State*, (1935) 208 Ind. 231, 195 N.E. 268, this Court stated:

"It has been repeatedly held, and is well settled, that it is error for the court in a criminal action to instruct the jury what evidence will be sufficient to establish any ultimate fact. Such an instruction is an invasion of the constitutional right of the jury to determine the facts for itself." 208 Ind. at 239.

Here, the issue of whether appellant was a woman was taken entirely from the jury and decided by the court. If the case had been tried in a single proceeding before the jury, the jury would have been instructed that they were bound to consider that the womanhood of appellant had been proved beyond a reasonable doubt. In Indiana, under our Constitution, this procedure for determining sex by judicial notice is simply a denial of the right to trial by jury. The most that a trial court can do, consistent with the right to trial by jury, is to point out that a particular inference would be reasonable. *Gann* v. *State*, (1971) 256 Ind. 429, 269 N.E.2d 381; *Miller* v. *State*, (1944) 223 Ind. 50, 58 N.E.2d 114.

While appellant has not specifically made the claim that the procedure is violative of the privilege against self-incrimination, it is appropriate to consider this issue in light of the closely related constitutional challenges which call the issue out.

The procedure for establishing sex works in this way. The judge announces that he takes judicial notice that the accused is either a man or woman. At this point, the judicially-noticed

fact, standing alone without more, cannot serve to satisfy the due process burden of the State to prove the statutory element of sex beyond a reasonable doubt. At this point, the fact does not have sufficient evidentiary force or weight to support a conviction. However, this judicially-noticed fact can gain additional and sufficient evidentiary force or weight if the accused remains silent or fails to produce evidence sufficient to indicate that he is not of the sex alleged in the charge. It therefore becomes clear that the silence or inability to negate has the force of evidence and is used against the accused as affirmative evidence of that which the State must prove. Silence elevates the quality of the judicially-noticed fact to certainty beyond a reasonable doubt and increases the probability of conviction.

Silence of the accused in a criminal case cannot be used as evidence of guilt. *Griffin* v. *California,* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; *Rowley* v. *State,* (1972) 259 Ind. 209, 285 N.E.2d 646; *Keifer* v. *State,* (1933) 204 Ind. 454, 184 N.E. 557. If the accused, under the procedure adopted here, does not attempt to produce evidence to rebut the judicially-noticed fact, this silence serves as proof of that which the State is required to prove to convict.

If an accused testifies in an attempt to produce sufficient evidence to rebut the judicially-noticed fact, that testimony is compelled and may be incriminating. Such testimony is compelled, because the accused knows that his silence will necessarily establish one of the elements of the offense against him beyond a reasonable doubt and also that, if he does not testify, the right to trial by jury on the issue will be lost. Such testimony may be incriminating, because, if it is insufficiently persuasive, it serves to raise the judicially-noticed fact to certainty beyond a reasonable doubt. Placing the burden of production upon the accused is in conflict with the privilege against self-incrimination, when the fact which the accused must produce some evidence about is a statutory

element of the criminal charge and is therefore critical to the determination of guilt.

NOTE.—Reported at 340 N.E.2d 764.